**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES PARRIS, TIM BROWN, DOUG BROCKMAN, STACY ALLEN, CHRISTOPHER HUMMER, RICHARD POND, STEVEN COOKE, ANNA CLICK, DAVID GARRETT, AND WESLEY PROFITT** | ) | **Case No. 1:26-cv-01140** |
| | ) | **JURY DEMAND** |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| **HENRY COUNTY, TENNESSEE, HENRY COUNTY HOSPITAL DISTRICT d/b/a HENRY COUNTY MEDICAL CENTER AND HENRY COUNTY MEDICAL CENTER EMERGENCY MEDICAL SERVICES, INC., and AMERICAN MEDICAL RESPONSE OF TENNESSEE, INC.** | ) | |
| **Defendants.** | ) | |

## FIRST AMENDED COMPLAINT

Plaintiffs James Parris, Tim Brown, Doug Brockman, Stacy Allen, Christopher Hummer, Richard Pond, Steven Cooke, Anna Click, David Garrett, and Wesley Profitt ("Plaintiffs"), by and through the undersigned counsel, file this Complaint against the Defendants, Henry County, Tennessee ("Henry County"), Henry County Hospital District d/b/a Henry County Medical Center and Henry County Medical Center Emergency Medical Services, Inc. ("HCMC"), and American Medical Response of Tennessee, Inc. ("AMR") (collectively, "Defendants"), and allege as follows:

## SUMMARY OF ACTION

1. This action arises from the unlawful deprivation of Plaintiffs' retirement benefits and creditable service hours under Tennessee Consolidated Retirement System ("TCRS"), the Tennessee public retirement system.

2. Plaintiffs are emergency medical technicians ("EMTs") employed by HCMC, a government hospital owned and operated by Henry County, Tennessee through HCMC until at least October 2024. During their employment, Plaintiffs served as first-responders providing critical emergency medical services to the population of Henry County, including during the COVID-19 pandemic, and were treated in every respect as employees of HCMC. As full-time employees of HCMC, a public entity, Plaintiffs participated in TCRS and accumulated service hours towards their retirement benefits. As of May 2020, all of the Plaintiffs were vested under TCRS.

3. In May 2020, HCMC entered into an "Emergency Medical Services Agreement" ("Agreement") with Defendant AMR, a private for-profit corporation. The Agreement granted AMR an exclusive franchise to operate ambulance services within the County, and to direct and control the work of its personnel. However, because HCMC knew that Plaintiffs were vested in TCRS but had not yet obtained the requisite years of service to be eligible for full-service retirement benefits under TCRS, knew that Plaintiffs wanted to remain participating members in TCRS, and that AMR did not want to incur the expense of having to replace these experienced EMTs, they included a carve-out in the Agreement pursuant to which HCMC lent Plaintiffs' services as EMTs to AMR. Pursuant to this carve-out, HCMC and AMR agreed that during the pendency of the Agreement, Plaintiffs would remain on HCMC payroll so it could continue to report their service and salary credits to TCRS.

4. From May 2020 through October 2024, Plaintiffs continued to be employed as EMTs on HCMC's payroll, and they had their service hours and contributions remitted to TCRS. In October 2024, Henry County divested control of HCMC to a private entity, West Tennessee Healthcare Henry County, and passed a resolution to employ Plaintiffs directly so they could remain eligible to participate in TCRS, and entered a Staffing Services Agreement with AMR whereby AMR would continue to control and supervise their work, and would reimburse the County for all costs associated with employing Plaintiffs. Henry County continued reporting Plaintiff's service hours and salary to TCRS.

5. However, following an investigation, TCRS informed HCMC in early 2025 of its opinion that as a result of the Agreement between HCMC and AMR entered in May 2020, Plaintiffs had been contract employees of AMR, which is not an eligible employer under TCRS. TCRS also opined that the Plaintiffs remained employees of AMR even after Henry County passed its resolution in October, 2024. As a result, TCRS informed Henry County that it must stop reporting the Plaintiffs' service hours as soon as operationally feasible, that TCRS intended to remove the Plaintiffs' TCRS service and salary history reported since May 15, 2020, and that TCRS would refund all contributions made on Plaintiffs' behalf during this period, but this process would take time.

6. Henry County and HCMC first notified Plaintiffs of TCRS' opinion in late February, 2025.

7. On April 8, 2025, Plaintiffs sent a written request to TCRS appealing its determination that they would not be credited for their service hours and salary history reported by HCMC since May 15, 2020. A hearing on Plaintiffs' appeal took place before the TCRS director on May 8, 2025. On June 4, 2025, the TCRS director issued his findings concluding that,

due to the fact that AMR had the ultimate authority to direct and control their work as EMTs, Plaintiffs were not employees of HCMC, and allowing them to participate in TCRS under these circumstances would imperil its status as a qualified plan under IRS Code and risk injuring hundreds of thousands of TCRS members. His findings were not swayed by the language in the Agreement which purported to allow HCMC to keep Plaintiffs on its payroll, which he called "disturbing," "void," and "otherwise unenforceable." The TCRS director informed Plaintiffs that further administrative review may be sought through a contested case proceeding, but this was a futility given that the factual record was well-established, and the director's findings under the applicable federal and state law. These rendered it a certainty Plaintiffs' contested case proceeding would be defeated, and the additional expenditure of litigation expenses would be wasteful.

8. As a result of HCMC's actions and the Agreement executed between HCMC and AMR, Plaintiffs lost years of creditable service and reportable income, and this have incurred substantial reductions in their expected retirement annuities. Furthermore, although TCRS refunded Henry County and HCMC in late 2025 for the employer contributions made on Plaintiffs' behalf for the period of May 15, 2020 forward, although Plaintiffs have a property interest in these monies, and although Henry County and HCMC represented to both Plaintiffs and state officials that they would return the employer contributions to Plaintiffs, they have refused to do so. Neither have Henry County nor HCMC reimbursed TCRS, as they promised to do, for any overpayments to Plaintiffs who already retired and were collecting payments prior to TCRS's determination of ineligibility, and who now are liable to repay these benefits. The deprivation of these benefits occurred without constitutionally adequate procedural protections and under color of state law. Finally, Plaintiffs have suffered humiliation, embarrassment, and emotional distress caused by the denial of procedural due process, as they have suffered the loss of nearly five years' worth of work

during which they expected to be growing their retirement nest eggs—time which they will never get back. If Plaintiffs want to replace the benefits they lost in TCRS, they face the daunting prospect of having to invest an additional five years of their working lives, which will disrupt the Plaintiffs' retirement window.

9. Plaintiffs bring this action to recover damages and obtain relief for the unlawful deprivation of their property interests, for the contractual and affirmative and/or negligent misconduct that caused their losses, and for the mental and emotion distress imposed by the Defendants' conduct.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1343, which provides jurisdiction over civil rights actions brought under 42 U.S.C. § 1983.

11. This Court also has federal question jurisdiction under 28 U.S.C. § 1331.

12. This Court has subject matter jurisdiction over this case over Defendant AMR based on diversity of citizenship under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the citizenship of Defendant AMR is diverse from Plaintiffs.

13. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, because those claims arise out of the same nucleus of operative facts as the federal claims.

14. Venue is proper in this district because the events giving rise to these claims occurred within this judicial district and Plaintiffs and Defendants Henry County and HCMC are located within this district.

**PARTIES**

15. Plaintiff James Parris is a citizen and resident of Buchanan, Henry County, Tennessee. Plaintiff Parris is an EMT who worked as an employee at HCMC.

16. Plaintiff Tim Brown is a citizen and resident of Paris, Henry County, Tennessee. Plaintiff Brown is an EMT who worked as an employee at HCMC.

17. Plaintiff Doug Brockman is a citizen and resident of Springville, Henry County, Tennessee. Plaintiff Brockman is an EMT who worked as an employee at HCMC.

18. Plaintiff Stacy Allen is a citizen and resident of New Johnsonville, Humphreys County, Tennessee. Plaintiff Allen is an EMT who worked as an employee at HCMC.

19. Plaintiff Christopher Hummer is a citizen and resident of Puryear, Henry County, Tennessee. Plaintiff Hummer is an EMT who worked as an employee at HCMC.

20. Plaintiff Richard Pond is a citzen and resident of Paris, Henry County, Tennessee. Plaintiff Pond is an EMT who worked as an employee at HCMC.

21. Plaintiff Steven Cooke is a citizen and resident of Springville, Henry County, Tennessee. Plaintiff Cooke is an EMT who worked as an employee at HCMC.

22. Plaintiff Anna Click is a citizen and resident of Huntingdon, Carroll County, Tennessee. Plaintiff Click is an EMT who worked as an employee at HCMC.

23. Plaintiff David Garrett is a citizen and resident of McKenzie, Weakley County, Tennessee. Plaintiff Garrett is an EMT who worked as an employee at HCMC.

24. Plaintiff Wesley Profitt is a citizen and resident of McEwen, Humphreys County, Tennessee. Plaintiff Profitt is an EMT who worked as an employee at HCMC.

25. Defendant Henry County, Tennessee, is a political subdivision of the State of Tennessee. This Defendant can be served via the County Mayor Randy Geiger at 101 W. Washington Street, Paris, Tennessee 38242 or wherever it may be found.

26. Defendant HCMC was created by Tennessee statute and operated a government hospital owned by Henry County, Tennessee. HCMC is operated and controlled by a board of trustees consisting of between three (3) and seven (7) persons appointed by the Henry County Commission. In late 2024, West Tennessee Healthcare Henry County, a Tennessee non-profit corporation, assumed control of HCMC pursuant to an operations transfer and lease. This Defendant can be served upon its legal counsel or wherever it may be found.

27. Defendant AMR is a private for-profit corporation registered in Delaware, with its principal place of business at 4400 Highway 121, Suite 700, Lewisville, Texas 75056. AMR is engaged in providing health care and emergency medical services. AMR can be served via its registered agent, Corporation Service Company, at 2908 Poston Avenue, Nashville, Tennessee 37203-1312 or wherever it may be found.

## FACTUAL ALLEGATIONS

### *Henry County/HCMC's Participation in TCRS*

28. The TCRS is a trust fund, established by the Tennessee General Assembly and administered by a 20-member Board, for the purpose of providing retirement benefits to Tennessee's public employees. Tenn. Code Ann. §§ 8-34-301, 8-34-302.

29. The retirement plans administered by TCRS are defined benefit plans, which means that the retiree's annuity is set using a specific formula and that payments are made, at this fixed amount, for the remainder of the retiree's life.

30. TCRS provides a lifetime monthly benefit as determined by a formula specified in state law.

31. The formula for computing a monthly retirement benefit consists of a member's Average Final Compensation ("AFC"), years of creditable service, and a benefit accrual factor.

32. The AFC is the average of the member's five highest consecutive years (60 consecutive months) of earnable compensation, while creditable service means any period of public service credited by TCRS for service as a state employee. Accordingly, the higher the employee's salary and more creditable service an employee has at retirement, the higher that employee's annuity will be.

33. An employee member becomes vested in TCRS upon completing five years (60 months) of creditable service to a TCRS covered employer.

34. A vested member is eligible to receive a lifetime monthly retirement benefit from TCRS upon reaching either service retirement eligibility or early service retirement eligibility.

35. A vested member who has 30 years of creditable service or is at least age 60, is eligible for an unreduced service retirement benefit. The unreduced service retirement benefit payable to a member is 1.5% of the member's AFC, multiplied by the number of years of creditable service, and the social security integration level applicable at time of retirement.

36. As a qualified retirement plan under Internal Revenue Code, only employees of a qualified employer may participate in TCRS.

37. Under the terms of the TCRS' governing statute, any political subdivision of the State of Tennessee may elect to join the system, on the condition that the employer's contribution for each employee be paid entirely by the political subdivision, and not by the State of Tennessee. Tenn. Code Ann. § 8-35-201.

38. The chief governing body of Henry County, Tennessee passed a resolution to participate in TCRS effective July 1, 1968. That resolution authorized its employees in all its departments or instrumentalities to participate in TCRS subject to the approval of the TCRS Board of Trustees. That resolution further provided that liability for participation shall be borne by Henry County, a formula for making employer contributions, and that it shall not make other employer contributions to any other retirement or deferred compensation plan on behalf of its employees.

39. Henry County owned and operated HCMC from 2006 through October 1, 2024, when HCMC came under the control of West Tennessee Health Care, a private non-governmental entity. As a participating employer in TCRS, the full-time employees of Henry County (including HCMC prior to its privatization) participated in TCRS. In this context, HCMC and later Henry County remitted both the Plaintiffs' own employee contributions as well as the employer contributions to TCRS, and reported Plaintiffs' service hours and salaries during the relevant period.

***Plaintiffs' Experience as Employees of HCMC***

40. For many years, Plaintiffs worked as EMT professionals providing ambulance services within Henry County under the employment of HCMC and Henry County. During this time, they were told and believed they were employees of HCMC and Henry County.

41. Plaintiff James Parris began working at HCMC in or about 2007.

42. Plaintiff Tim Brown began working at HCMC in or about 1998.

43. Plaintiff Doug Brockman began working at HCMC in or about 2004.

44. Plaintiff Stacy Allen began working at HCMC in or about 2009.

45. Plaintiff Christopher Hummer began working at HCMC in or about 2015.

46. Plaintiff Richard Pond began working at HCMC in or about 2008.

47. Plaintiff Steven Cooke began working at HCMC in or about 2011.

48. Plaintiff Anna Click began working at HCMC in or about 2013.

49. Plaintiff David Garrett began working at HCMC in or about 1990.

50. Plaintiff Wesley Profitt began working at HCMC in or about 2017.

51. As of May 2020, all Plaintiffs were vested members in TCRS.

52. All Plaintiffs had made it their goal to retire as EMTs working in Henry County having reached full-service retirement benefits under TCRS.

***HCMC Enters an Agreement with AMR to Operate its Emergency Medical Services***

53. By resolution dated February 19, 2008, Henry County assigned the rights of all ambulance services in the county to HCMC.

54. Pursuant to the February 19, 2008 resolution, HCMC was empowered to contract with private entities and others for ambulance transport services subject to the approval of, among others, "the governing body of the area to be served," which includes Henry County.

55. In May 2020, HCMC entered into an Agreement granting AMR an exclusive franchise to operate ambulance services within Henry County. The Agreement also granted AMR authority to direct and control the work of all personnel providing these services.

56. However, the Agreement expressly provided that AMR could also "use personnel leased from third parties, including HCMC." The parties included this clause for several reasons. First, HCMC knew that Plaintiffs were vested in TCRS but had not yet obtained the requisite years of service to be eligible for full-service retirement benefits under TCRS. Second, HCMC also knew that Plaintiffs wanted to remain participating members in TCRS, and would leave to work for another qualified employer if they were to become employed with AMR. Lastly, AMR was

interested in retaining Plaintiffs' services as EMTs, given their tenure, the benefits of continuity, and the savings associated with not having to replace them.

57. Accordingly, HCMC and AMR agreed that with respect to the Plaintiffs, who were already employed as EMTs at HCMC at the time of the Agreement, they would remain on HCMC's payroll, and HCMC would be solely responsible for the payment of any and all wages and benefits to Plaintiffs, including the reporting of service hours and remittance of contributions to TCRS. In return for obtaining the benefit of Plaintiffs' continuing service as EMTs during the pendency of the Agreement, AMR agreed to reimburse HCMC for all wages, payroll taxes, insurance, benefits and retirement shares paid on their behalf.

58. At the time the Agreement was entered, HCMC officials represented that pursuant to the Agreement with AMR, Plaintiffs would remain employees of HCMC and continue to accrue creditable service hours in TCRS. Plaintiffs relied on HCMC's representations and believed that they would continue to be credited under TCRS for all hours worked as EMTs after the effective date of the Agreement. In announcing the Agreement, HCMC Chief Executive Officer Lisa Casteel stated that AMR "plan[s] to operate it as it is today" with the current fleet and manpower, and claimed "[t]his is a great partnership for Henry County, for Henry County Medical Center, for our employees and for AMR."

59. Upon information and belief, neither Henry County, AMR, HCMC, nor HCMC's legal counsel who drafted the Agreement, Kim Looney, reached out to TCRS to seek out their opinion about its validity or whether it would adversely impact the Plaintiffs' ability to continue participating in TCRS.

60. In May 2023, HCMC and AMR mutually agreed to extend the Agreement until June 30, 2025, or earlier in the event of a new Agreement or a termination.

61. From May 2020 through October 2024, Plaintiffs remained on HCMC's payroll. Throughout this entire period, HCMC reported their service hours to TCRS and deducted Plaintiffs' retirement contributions and remitted them along with the County's employer contributions to TCRS. AMR in turn reimbursed HCMC for the wages paid by HCMC, including the employer FICA taxes and TCRS contributions.

62. In October 2024, Henry County divested control of HCMC to a private entity, West Tennessee Healthcare Henry County, pursuant to an Operations Transfer Agreement. Then, Henry County mayor, Randy Geiger, told the Henry County Budget Committee at that time that the EMT employees, including Plaintiffs, would have to become county employees so they could remain eligible to participate in TCRS. The County passed a resolution to make Plaintiffs employees of Henry County, and entered a Staffing Services Agreement with AMR whereby AMR would continue to control and supervise their work, and would reimburse the County for all costs associated with employing Plaintiffs. The County asked the Tennessee Comptroller of the Treasury to review and approve such an arrangement.

63. In early 2025, following an investigation prompted by Henry County hiring Plaintiffs as employees, TCRS opined that as a result of the Agreement between HCMC and AMR effective May 15, 2020, Plaintiffs became contract employees of AMR. As a private for-profit corporation, AMR is not and cannot be a participating employer in TCRS since it is not a Tennessee governmental entity. As a result, TCRS determined that Plaintiffs were not "employees" of a covered "employer" under Tennessee law for TCRS purposes and were not eligible to accumulate creditable service hours from May 15, 2020, forward.

64. TCRS also opined that the Plaintiffs remained employees of AMR even after Henry County passed its resolution in October, 2024 which purported to make Plaintiffs employees of the County.

65. TCRS informed Henry County that it must stop reporting the Plaintiffs' service hours as soon as operationally feasible, and that TCRS intended to remove the Plaintiffs' TCRS service and salary history reported since May 15, 2020, and intended to refund all contributions made on Plaintiffs' behalf during this period. However, TCRS acknowledged that it could take several months to make the appropriate changes in the system to change the Plaintiffs' status and refund the contributions.

66. Henry County and HCMC first notified Plaintiffs of TCRS' opinion in late February, 2025. On that occasion, the Henry County mayor held a meeting in which he informed Plaintiffs that the question about whether they can participate in TCRS since October 2024 is "being investigated," but TCRS has issued a legal opinion that Plaintiffs cannot. The mayor explained he had been informed that it was not legal for TCRS to have Plaintiffs as participants, and it would jeopardize the entire system. He also told Plaintiffs the County does not see how they can prove that TCRS is wrong. He represented that all of the contributions made on Plaintiffs' behalf plus interest will be returned to the County by TCRS. He emphasized that the County will do whatever it can to "make them whole." Plaintiffs told the mayor that they "cannot get these years of our life back," and what they really wanted is to keep their service credits. The mayor agreed, stating "That's exactly what I would want if I were in your shoes." The mayor also emphasized that, according to TCRS, "This is gonna take a while to unwind," and asked that Plaintiffs "give the County some time to figure this out."

67. Later, in March, 2025, the Henry County mayor held another meeting in which he told Plaintiffs, "I don't see TCRS giving your years back because it's not legal." The mayor contended that the Agreement says Plaintiffs were AMR employees, and if "they [Henry County and HCMC] would've had legal review it back then, the problem would've been resolved a lot quicker." The mayor acknowledged that he cannot keep battling with TCRS, and the County would just "have to move forward." The mayor mentioned that TCRS will send all the contributions made on Plaintiffs' behalf plus interest to the County, and then the County will return "everything" back to Plaintiffs since they were all fully vested. He also informed Plaintiffs that they would not be able to try and "buy back" their lost service years, and they were gone forever.

68. On April 8, 2025, Plaintiffs sent a written notice to TCRS that it was appealing its opinion that they would not be credited for their service hours and salary history reported by HCMC since May 15, 2020.

69. On May 8, 2025, the TCRS director conducted a hearing on Plaintiffs' appeal.

70. On June 4, 2025, the TCRS director issued his findings and conclusions. He found that irrespective of the language of the Agreement or the latter Staffing Services Agreement, under state and federal law Plaintiffs were not employees of HCMC but rather of AMR, a private, non-government employer, and therefore not qualified to participate in TCRS. Specifically, TCRS found that: (1) AMR had exclusive rights and responsibilities under the Agreement over ground ambulance services which the Plaintiffs provided; (2) AMR had the ultimate authority to exercise discretion and control over Plaintiffs' work as EMTs; (3) although Plaintiffs received paychecks from HCMC, their wages and benefits (including contributions to TCRS) were ultimately paid by AMR which reimbursed HCMC for these costs; and (4) TCRS risked being stripped of its status

as a qualified plan under IRS Code if Plaintiffs were allowed to participate in TCRS under these circumstances.

71. The TCRS director informed Plaintiffs that further administrative review may be sought through a contested case proceeding within 60 days at their own expense. However, given the director's findings about the unenforceable Agreement reached between HCMC and AMR and the applicable federal and state law directly on point, Plaintiffs deemed pursuing a contested case was proceeding a futility. Additionally, it appeared that Plaintiffs had no cause to pursue a contested case to obtain a refund of the employer contributions, as TCRS lacks statutory authority to disburse employer contributions to Plaintiffs.

72. As a result of HCMC's actions and the Agreement executed between HCMC and AMR, Plaintiffs lost years of creditable service and reportable income, and thus have incurred substantial reductions in their expected retirement annuities. Furthermore, although TCRS refunded Henry County and HCMC in December, 2025 for the employer contributions made on Plaintiffs' behalf for the period of May 15, 2020 forward, and although Plaintiffs have an unquestioned property interest in these monies, Henry County and HCMC have refused to remit them back to Plaintiffs.

73. Until approximately January, 2026, TCRS did not formally adjust Plaintiffs' service and salary rates and reimburse Plaintiffs for their employee contributions deducted from their pay for the period of May 15, 2020 forward.

74. Upon information and belief, TCRS refunded Henry County and HCMC the employer contributions it made on Plaintiffs' behalf during the pendency of the Agreement in or about December, 2025. However, Henry County and HCMC refused to refund the employer

contributions back to Plaintiffs, which amounted to approximately Two-Hundred Thousand dollars ($200,000).

75. As a result of HCMC's actions and the Agreement executed between HCMC and AMR, Plaintiffs lost years of creditable service and reportable income, and thus have incurred substantial reductions in their expected retirement annuities.

76. Although Plaintiffs recovered their employee contributions they originally paid into TCRS after HCMC and AMR entered the Agreement, they have received no compensation for the lost years of creditable service, as the primary value of participation in TCRS is the accrual of service credit towards an annuity, not merely the return of employee contributions. Plaintiffs accepted employment with HCMC and agreed to remain employed after the AMR Agreement on the express condition that they would continue to accumulate service hours until they obtained the requisite years of service to be eligible for full-service retirement benefits under TCRS. However, the actions of HCMC and AMR have forever deprived them of the opportunity to recapture these lost years of service. As a result, Plaintiffs collectively have lost hundreds of thousands of dollars in retirement benefits under TCRS that they otherwise would have been entitled to but for the actions of HCMC and AMR.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983 – Deprivation of Property Without Due Process
### (Against Defendants Henry County and HCMC)

77. Plaintiffs reallege and incorporate by reference all of the prior paragraphs as if specifically stated herein.

78. During the relevant period, Plaintiffs had a reasonable expectation of receiving credit under TCRS based on their listed status as employees of an eligible employer, i.e. a political subdivision of Tennessee.

79. Plaintiffs possessed a constitutionally protected property interest in the creditable service hours they accumulated and employer contributions that were paid into TCRS on their behalf as a result of their employment with HCMC and later through Henry County.

80. Defendants Henry County and HCMC, acting under color of state law, deprived Plaintiffs of this property interest without due process of law during the pendency of the Agreement and Staffing Services Agreement with private, for-profit corporation AMR, in violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

81. The deprivation occurred through Defendant Henry County's and Defendant HCMC's actions and contractual arrangements with AMR that rendered Plaintiffs ineligible for retirement credit despite years of contributions and service during the pendency of the Agreement, and through their refusal to refund Plaintiffs the employer contributions that Defendants originally paid to TCRS on their behalf.

82. Plaintiffs were not provided adequate procedural safeguards before being deprived of this property interest.

83. As a direct and proximate result, Plaintiffs have suffered significant financial losses.

84. As a direct and proximate result, Plaintiffs have suffered humiliation, embarrassment, and emotional distress caused by the denial of procedural due process.

**COUNT II**
**Breach of Contract – Third-Party Beneficiary**
**(Against Defendants Henry County, HCMC and AMR)**

85. Plaintiffs reallege and incorporate by reference all of the prior paragraphs as if specifically stated herein.

86. The Agreement between HCMC and AMR expressly contemplated that AMR was in need of qualified and experienced EMT and paramedic personnel to supplement its workforce in Henry County pursuant to its exclusive franchise to provide emergency medical ambulance services. To this end, the Agreement allowed AMR to "lease" the Plaintiffs who were at that time employed by HCMC to provide these services.

87. Pursuant to the Agreement, AMR could "lease" employees from HCMC, and AMR explicitly agreed that it would not be "requesting funding or subsidy of any type from HCMC to cover any costs or any shortfalls from the provision of any Services or any obligations pursuant to this Agreement." Therefore, AMR contractually obligated itself to reimburse HCMC for costs associated with employing the Plaintiffs in performing their services as EMTs, which included the reporting of creditable service hours, salary, and making employer contributions to TCRS for their retirement benefits.

88. In 2024, after purporting to hire Plaintiffs as employees, Henry County entered a separate Staffing Services Agreement whereby Henry County contracted to provide EMTs/Paramedics to AMR. Pursuant to the Staffing Services Agreement, Henry County would be responsible for paying Plaintiffs in performing their services as EMTs, which includes the reporting of creditable service hours, salary, and making employer contributions to TCRS for their retirement benefits. In exchange, the Agreement required AMR to reimburse Henry County for its direct costs per employee per hour, which included benefits and retirement share.

89. Both the Agreement and the Staffing Services Agreement were valid contracts intended by the parties to establish the terms and conditions for staffing emergency medical services for Henry County, including the compensation to be received by the employees providing those services.

90. The Agreement and the Staffing Services Agreement confer a direct obligation to Plaintiffs, as they establish that they will have their creditable service hours, salary, and employer contributions remitted to TCRS for their retirement benefits.

91. Plaintiffs were intended third-party beneficiaries of the contractual provisions in the Agreement and the Staffing Services Agreement.

92. Defendants did not expressly exclude Plaintiffs from the benefits of the Agreement or Staffing Services Agreement.

93. Defendants breached the Agreement by operating the ambulance services in a manner that caused Plaintiffs to lose eligibility for retirement service credits, salary reporting, and the value of the employer contributions to TCRS which they accrued during the pendency of the Agreement.

94. Plaintiffs suffered substantial damages as a result.

**COUNT III**
**Tortious and/or Negligent Interference with a Business Relationship**
**(Against Defendant AMR)**

95. Plaintiffs reallege and incorporate by reference all of the prior paragraphs as if specifically stated herein.

96. Plaintiffs had a prospective and/or existing business relationship in the form of their employment as EMTs at HCMC and had a pecuniary interest the compensation and benefits they enjoyed as a result.

97. Defendant AMR was aware and had knowledge of Plaintiffs' prospective and/or existing business relationship and pecuniary interest in their employment as EMTs at HCMC.

98. Defendant AMR knowingly, recklessly, and/or negligently interfered with that relationship by exercising control over the terms and conditions of Plaintiffs' employment in a manner that caused Plaintiffs to be treated as contract employees of ineligible employer AMR rather than eligible employers in Defendants Henry County and HCMC. Defendant AMR desired an exclusive franchise over emergency medical services within Henry County, the financial benefits flowing therefrom, and wanted to control Plaintiffs' conditions of employment. Defendant AMR also wished to avoid the cost and inconvenience associated with replacing Plaintiffs with similarly qualified and experienced EMTs. To this end and in furtherance of its own financial interests, Defendant AMR executed the Agreement and Staffing Services Agreement in disregard of Plaintiffs' ability to remain eligible under TCRS.

99. Defendant AMR's actions foreseeably caused Plaintiffs to lose creditable service toward their retirement benefits under TCRS.

100. Plaintiffs have suffered substantial damages as a result.

**COUNT IV**
**Breach of Contract Implied in Fact and/or Implied in Law**
**(Against Defendants Henry County, HCMC, and AMR)**

101. Plaintiffs reallege and incorporate by reference all of the prior paragraphs as if specifically stated herein.

102. By agreeing to hire and employ Plaintiffs as EMTs in exchange for payment of certain compensation and benefits, including benefits under TCRS, Defendants Henry County and HCMC, and alternatively Defendant AMR as Plaintiffs' common law employer, formed an enforceable contract with Plaintiffs.

103. The retirement benefits under TCRS to which Plaintiffs were entitled as employees of a public entity were contractual rights accruing upon their acceptance of employment. By Plaintiffs accepting employment with Defendants Henry County and HCMC, and alternatively Defendant AMR as Plaintiffs' common law employer, it created a binding obligation on behalf of Defendants Henry County and HCMC, and alternatively Defendant AMR as Plaintiffs' common law employer, to pay benefits to which they were entitled under TCRS.

104. Through its conduct and course of dealing, Defendant AMR as Plaintiffs' common law employer created an implied contractual employment relationship under which Plaintiffs would be considered employees of AMR and Plaintiffs would continue to be employed under the same terms as their employment with HCMC and Henry County, including that they would continue to accrue creditable service under TCRS.

105. Defendants Henry County and HCMC, and Defendant AMR as Plaintiffs' common law employer, breached this implied agreement by causing Plaintiffs to be classified as contract employees with an ineligible employer and thereby eliminating their ability to accumulate creditable service hours in TCRS.

106. Plaintiffs were not permitted to retain the service hours, salary reporting, or employer contributions remitted on their behalf as employees of Defendants Henry County and HCMC, and alternatively Defendant AMR as Plaintiffs' common law employer, amounting to a further breach of their employment contract.

107. Defendants Henry County, HCMC, and Defendant AMR as common law employer could have and/or should have foreseen that the Plaintiffs would lose their retirement benefits under TCRS.

108. As a result of the breach by Henry County and HCMC, and alternatively Defendant AMR as Plaintiffs' common law employer, Plaintiffs suffered damages in the form of lost service hours, salary reporting, employer contributions and the value of increased retirement annuity under TCRS.

**COUNT V**
**Fraudulent Inducement**
**(Against Defendant AMR)**

109. Plaintiffs reallege and incorporate by reference all of the prior paragraphs as if specifically stated herein.

110. Defendant AMR intentionally misrepresented to Plaintiffs that if they remained employed as EMTs during the pendency of the Agreement, Plaintiffs would continue to accrue creditable hours towards their TCRS retirement as employees of Henry County and HCMC.

111. Plaintiffs relied on this misrepresentation, which was material to Plaintiffs' decision to remain employed as EMTs at HCMC and forego other job opportunities with eligible employers under TCRS where they could accumulate creditable service hours.

112. At the time Defendant AMR made this misrepresentation, Defendant AMR either had no present intention that Plaintiffs' service hours would be credited under TCRS or were recklessly indifferent to the same.

113. Defendant AMR knew or should have known at the time it represented that Plaintiffs would continue to accrue creditable hours towards their TCRS retirement in working as EMTs during the pendency of the Agreement that its statement was false or uttered in disregard for the truth.

114. Defendant AMR intentionally and/or recklessly made this misrepresentation to Plaintiffs in order to induce them to remain employed as EMTs at HCMC so that Defendant AMR

could fulfill its exclusive franchise in supplying emergency medical services in Henry County under the Agreement without incurring the costs associated with replacing Plaintiffs' labor and experience.

115. Plaintiffs reasonably relied on Defendant AMR's misrepresentation and were injured as a result of such reliance.

116. Defendant AMR's misrepresentation constituted fraudulent inducement and but for the representation, the Plaintiffs would not have continued in their employment as EMTs at HCMC.

117. Plaintiffs continued to remain employed as EMTs at HCMC based on their reasonable reliance on Defendant AMR's promises that Plaintiffs would continue to accrue creditable service hours in TCRS.

118. As a result of Defendant AMR's fraudulent inducement, Plaintiffs suffered injuries in the loss of creditable service hours in TCRS and retirement benefits to which they otherwise would have been entitled.

**COUNT VI**
**Unjust Enrichment**
**(Against Defendants Henry County, HCMC and AMR)**

119. Plaintiffs reallege and incorporate by reference all of the prior paragraphs as if specifically stated herein.

120. Plaintiffs conferred a benefit on Defendants by performing work for as EMTs providing emergency ambulance services within Henry County during the pendency of the Agreement and the Staffing Services Agreement.

121. Defendants received the benefit of Plaintiffs' labor in fulfilling their legal and contractual obligation to provide emergency ambulance services within Henry County during the pendency of the Agreement and Staffing Services Agreement.

122. Defendants appreciated the value of the benefits conferred upon them by Plaintiffs and accepted those benefits by allowing the Plaintiffs to work those hours and, upon information and belief, receiving compensation for the provision of emergency ambulance services in Henry County pursuant to the Agreement and Staffing Services Agreement.

123. While employed as EMTs during the period of the Agreement and Staffing Services Agreement, Plaintiffs complied with all conditions necessary and reasonably within their control to be eligible to have their service hours, salaries, and contributions remitted to TCRS and be credited towards their retirement benefits.

124. Defendants falsely represented that in performing their work as EMTs during the pendency of the Agreement and Staffing Services Agreement, Plaintiffs would continue to accrue creditable hours towards their TCRS retirement as employees working for a qualified employer under the TCRS requirements. As a result, Plaintiffs have lost the ability to credit any of the hours they worked or the salary levels that were reported during the pendency of the Agreement and the Staffing Services Agreement, which has materially impacted their anticipated TCRS retirement benefits.

125. Defendants also received a refund of all employer contributions which were made to TCRS on Plaintiffs' behalf during the pendency of the Agreement and Staffing Services Agreement, and have refused to remit those employer contributions back to Plaintiffs.

126. Under the circumstances, it would be unjust and inequitable for Defendants to be allowed to retain the benefit of Plaintiffs' labor, the value of the employer contributions made on

Plaintiffs' behalf, and other benefits conferred while Plaintiffs suffer the loss of creditable service hours and salary levels in TCRS and retirement benefits to which they otherwise would have been entitled.

127. Defendants have therefore been unjustly enriched at Plaintiffs' expense.

**COUNT VII**
**Promissory Estoppel / Equitable Estoppel / Detrimental Reliance**
**(Against Defendant AMR)**

128. Plaintiffs reallege and incorporate by reference all of the prior paragraphs as if specifically stated herein.

129. Defendant AMR made clear and definite representations that during the pendency of the Agreement, Plaintiffs would remain employees of eligible employers Henry County and HCMC for purposes of accumulating creditable service hours in TCRS.

130. Defendant AMR's promises were unambiguous.

131. Plaintiffs reasonably relied upon those representations in continuing their employment as EMTs during the pendency of the Agreement and contributing to TCRS. Defendant AMR's promises induced the Plaintiffs to continue working as EMT's at HCMC which Plaintiffs would not have done but for Defendant AMR's promises.

132. Defendant AMR should reasonably have expected Plaintiffs to remain employed as EMT's during the pendency of the Agreement and Staffing Services Agreement due to the promise that they would remain eligible to participate in TCRS, and thus Plaintiffs' reliance was foreseeable.

133. Plaintiffs suffered substantial economic losses as a result of that reliance.

134. Enforcement of Defendant AMR's promises is necessary to avoid injustice.

## COUNT VIII
### Negligence / Negligent Misrepresentation
### (Against Defendant AMR)

135. Plaintiffs reallege and incorporate by reference all of the prior paragraphs as if specifically stated herein.

136. Defendant AMR acted in its own pecuniary interest in agreeing to utilize Plaintiffs as EMTs providing emergency ambulance services in Henry County.

137. To induce Plaintiffs to remain employed as EMTs at HCMC, Defendant AMR falsely represented that Plaintiffs could remain eligible to participate in and accrue creditable service and salary reporting to TCRS after Defendant AMR assumed exclusive control over the ambulance services in Henry County.

138. Defendant owed a duty to be honest and deal in good faith when communicating with Plaintiffs regarding the terms and conditions of their employment.

139. Defendant AMR failed to exercise reasonable care in communicating that Plaintiffs would remain eligible to participate in TCRS after it assumed control over emergency ambulance services in Henry County and the power to direct and control Plaintiffs' employment. Thus, Defendant AMR's conduct fell below the applicable standard of care and breached of that duty.

140. Plaintiffs justifiably relied on Defendant AMR's representations to their detriment. Had Plaintiffs known the truth that they would no longer remain eligible to participate in TCRS or accumulate service hours, they would not have remained employed as EMTs at HCMC.

141. Defendant AMR's conduct was a substantial factor in bringing about the Plaintiffs' injuries.

142. There is no statute, rule or policy that should relieve Defendant AMR from liability due to the manner in which its own negligence and/or negligent misrepresentation has resulted in the harms suffered by Plaintiffs.

143. Defendant AMR could have or should have reasonable foreseen or anticipated the Plaintiffs' injuries.

144. As a result, Plaintiffs have suffered pecuniary losses in the form of reduced retirement annuities, deprivation of the employer contributions remitted to TCRS on their behalf, and mental and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and grant the following relief:

A. A judgment in favor of the Plaintiffs in the amount of all damages allowable under federal and state law, including but not limited to: monetary damages sufficient to compensate Plaintiffs for the shortfall between the retirement payments they would have received if they had been credited with their service hours and the retirement benefits they will actually receive, disgorgement of profits earned, reimbursement of amounts improperly deducted or contributed on their behalf, and other appropriate compensatory or equitable relief allowed under law.

B. An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

C. Pre-judgment and post-judgment interest as allowed by law;

D. Such other and further equitable or legal relief as the Court deems just and proper; and

E. A trial by jury on all issues so triable.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all claims so triable.

DATED: September 22, 2026

Respectfully submitted,

*/s/ Joey P. Leniski, Jr.*
Joey P. Leniski, Jr., BPR No. 22891
Daniel Hull, BPR No. 24511
**HERZFELD, SUETHOLZ, GASTEL, LENISKI AND WALL PLLC**
1920 Adelicia Street, Suite 300
Nashville, Tennessee 37212
Phone: (615) 800-6225
Email: joey@hsglawgroup.com
daniel@hsglawgroup.com

*Attorneys for Plaintiffs*