**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | |
|---|---|
| **JAMES PARRIS, TIM BROWN, DOUG BROCKMAN, STACY ALLEN, CHRISTOPHER HUMMER, RICHARD POND, STEVEN COOKE, ANNA CLICK, DAVID GARRETT, AND WESLEY PROFITT** | **Case No. 1:26-cv-01140-STA-jay** |
| Plaintiffs, | **Judge S. Thomas Anderson**<br>**Magistrate Judge Jon A. York** |
| v. | |
| **HENRY COUNTY, TENNESSEE, HENRY COUNTY HOSPITAL DISTRICT d/b/a HENRY COUNTY MEDICAL CENTER AND HENRY COUNTY MEDICAL SERVICES, INC., and AMERICAN MEDICAL RESPONSE OF TENNESSEE, INC.** | |
| Defendants. | |

**PLAINTIFFS' CONSOLIDATED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... iii

INTRODUCTION .................... 1

SUMMARY OF THE ACTION .................... 2

STANDARD OF REVIEW .................... 6

ARGUMENT .................... 7

I. NO REQUIREMENT TO EXHAUST STATE ADMINSTRATIVE REMEDIES 7

A. No Statute Requires Exhaustion by Its Plain Words .................... 7

B. The Court Should Not Exercise Its Discretion to Require Exhaustion .................... 9

C. Defendants' Authorities Do Not Apply .................... 11

1. Defendants identify no statute that mandates exhaustion. .................... 11

2. Defendants' cases involved direct challenges to agency decisions .................... 12

3. Crawford and Baumgartner did not decide necessity of exhaustion .................... 12

4. The primary-jurisdiction doctrine does not apply .................... 13

5. Futility is raised in the alternative, and AMR misstates its standard .................... 14

II. TCRS'S DECISION DOES NOT CONSTITUTE A SUPERSEDING CAUSE. 15

III. PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT AS THIRD-PARTY BENEFICIARIES (COUNT II) (AGAINST ALL DEFENDANTS) .................... 16

A. Plaintiffs Allege Defendants Failed to Fulfill the Terms of Employment Underlying the Agreement .................... 21

B. An Integration Clause Does not Prevent Examination of Surrounding Circumstances to Determine Intent to Benefit a Third-Party .................... 23

C. Plaintiffs Seek to Enforce a Contractual Obligation to Provide Retirement Benefits, Not to Enforce TCRS Rules or Regulations. .... 24

IV. PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT IMPLIED-IN-FACT OR -IN-LAW (COUNT IV) (AGAINST AMR). .... 25

V. PLAINTIFFS STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS (COUNT III) (AGAINST AMR) .... 28

VI. PLAINTIFFS STATE A CLAIM FOR FRAUDULENT INDUCEMENT (COUNT V) (AGAINST AMR) .... 30

VII. PLAINTIFFS STATE A CLAIM FOR PROMISSORY-ESTOPPEL (COUNT VII) (AGAINST AMR). .... 35

VIII. PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT VI) (AGAINST AMR) .... 37

IX. PLAINTIFFS STATE A CLAIM FOR NEGLIGENCE AND/OR NEGLIGENT MISREPRESENTATION (COUNT VIII) (AGAINST AMR) .... 40

X. PLAINTIFFS STATE A CLAIM FOR UNDER § 1983 (COUNT I) (AGAINST GOVERNMENT DEFENDANTS) .... 45

A. Plaintiffs' § 1983 Claims Are Timely .... 45

B. Plaintiffs Sufficiently Allege a Protected Property Interest .... 47

C. Plaintiffs Satisfy Monell .... 48

D. Henry County Bears Liability Directly Based on its Own Conduct. .... 49

CONCLUSION .... 50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adamson v. City of Provo, Utah*,
819 F. Supp. 934 (D. Utah 1993)....................48

*Advanced Ground Sys. Eng'g, Inc. v. United Airlines Inc.*,
No. IP00-0076-C-M/S, 2003 WL 21766574 (S.D. Ind. July 1, 2003), *aff'd sub nom. Advanced Ground Sys. Eng'g, Inc. v. RTW Indus., Inc.*, 388 F.3d 1036 (7th Cir. 2004)....................17

*Alden v. Presley*
637 S.W.2d 862 (Tenn.1982)....................35

*AMISUB (SFH), Inc. v. Cigna Health & Life Ins. Co.*,
681 F. Supp. 3d 842 (W.D. Tenn. 2023), *aff'd*, 142 F.4th 403 (6th Cir. 2025)....................38

*Angus v. City of Jackson*,
968 S.W.2d 804 (Tenn. Ct. App. 1997)....................25

*Arnett v. Kennedy*,
416 U.S. 134, 94 S. Ct. 1633, 40 L.Ed.2d 15 (1974)....................47

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6

*Asher v. 0xbow Ltd.*,
No. 3:25-CV-01057, 2026 WL 2268379 (M.D. Tenn. Aug. 6, 2026)....................38, 40

*B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*,
318 S.W.3d 839 (Tenn. 2010)....................46, 47

*Bailey v. Blount Cnty. Bd. of Educ.*,
303 S.W.3d 216 (Tenn. 2010)....................7, 9, 10, 14

*Baugh v. Novak*,
340 S.W.3d 372 (Tenn. 2011)....................24

*Baumgartner v. Tenn. Consol. Ret. Sys.*,
No. M2017-01715-COA-R3-CV, 2018 WL 4802472 (Tenn. Ct. App. Oct. 3, 2018)....................12, 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................6

*Bennett v. Trevecca Nazarene University*,
216 S.W.3d 293 (Tenn.2007) ........................................................................................41

*Biancheri v. Johnson*,
No. M2008-00599-COA-R3-CV, 2009 WL 723540 (Tenn. Ct. App. M.S., filed Mar. 18, 2009) ........................................................................................33

*Black v. Pension Benefit Guar. Corp.*,
983 F.3d 858 (6th Cir. 2020) ........................................................................................48

*Cady v. Arenac Cnty.*,
574 F.3d 334 (6th Cir. 2009) ........................................................................................49

*Calabro v. Calabro*,
15 S.W.3d 873 (Tenn. Ct. App. 1999) ........................................................................................35

*Cantrell v. Walker Die Casting, Inc.*,
121 S.W.3d 391 (Tenn. Ct. App. 2003) ........................................................................................12

*Carrier Corp. V. Outokumpu Oyj*,
673 F.3d 430 (6th Cir. 2012) ........................................................................................6

*Catlett v. Indemnity Ins. Co.*,
813 S.W.2d 411 (Tenn. 1991) ........................................................................................32

*Chattanooga-Hamilton Cnty. Hosp. Auth. v. UnitedHealthcare Plan of the River Valley, Inc.*,
475 S.W.3d 746 (Tenn. 2015) ........................................................................................9

*City of Morristown v. AT&T Corp.*,
206 F. Supp. 3d 1321 (E.D. Tenn. 2016) ........................................................................................44

*Coffey v. Foamex L.P.*,
2 F.3d 157 (6th Cir. 1993) ........................................................................................6, 7

*Coleman v. Wells Fargo Banks, N.A.*,
218 F. Supp. 3d 597 (M.D. Tenn. 2016) ........................................................................................31

*Concrete Spaces, Inc. v. Sender*,
2 S.W.3d 901 (Tenn. 1999) ........................................................................................45

*Concrete v. Harmony Hosp., LLC*,
No. M202000956COAR3CV, 2021 WL 3523248 (Tenn. Ct. App. Aug. 11, 2021) ........................................................................................40

*Contract Design Grp., Inc. v. Wayne State Univ.*,
635 F. App'x 222 (6th Cir. 2015). ("[M]ental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983.") ........................................................................................48

*Cooksey v. Shanks*,
136 S.W.2d 57 (1939)....................37

*Cotten v. Wilson*,
576 S.W.3d 626 (Tenn. 2019)....................15, 44

*Crawford v. Tenn. Consol. Ret. Sys.*,
732 S.W.2d 293 (Tenn. Ct. App. 1987)....................12, 13

*Davidson & Jones Dev. Co. v. Elmore Dev. Co.*,
921 F.2d 1343 (6th Cir. 1991)....................23

*Demarest v. Kovacevich*,
No. 3:23-CV-00932, 2025 WL 2375372 (M.D. Tenn. Aug. 14, 2025)....................21

*Dog House Investments, LLC v. Teal Properties, Inc.*,
448 S.W.3d 905 (Tenn Ct. App. 2014)....................33

*Durham v. Martin*,
388 F. Supp. 3d 919 (M.D. Tenn. 2019), *aff'd sub nom. Durham v. McWhorter*, 789 F. App'x 533 (6th Cir. 2020)....................46

*Eidson v. State of Tenn. Dep't of Children's Servs.*,
510 F.3d 631 (6th Cir.2007)....................46

*Engenius Entertainment, Inc. v. Herenton*,
971 S.W.2d 12 (Tenn.App.1997)....................35

*Evans-Barken v. Madison Cnty., Tennessee*,
No. W2020-01101-COA-R3-CV, 2022 WL 1487773 (Tenn. Ct. App. May 11, 2022)....................9

*Fam. Tr. Servs. LLC v. Green Wise Homes LLC*,
693 S.W.3d 284 (Tenn. 2024)....................38

*Ferguson v. Nationwide Prop. & Cas. Ins. Co.*,
218 S.W.3d 42 (Tenn. Ct. App. 2006)....................25

*Forrester v. Stockstill*,
869 S.W.2d 328 (Tenn. 1994)....................28

*Freeman Indus., LLC v. Eastman Chem. Co.*,
172 S.W.3d 512 (Tenn. 2005)....................38

*Fulwood Constr. Co., LLC v. McGil Holdings, LLC*,
No. 2:20-CV-02524-TLP-ATC, 2020 WL 7090686 (W.D. Tenn. Dec. 3, 2020)....................31

*Galloway v. Memphis Drum Service*,
822 S.W. 2d 584 (Tenn. 1991)....................32

*Goldberg v. Kelly*,
397 U.S. 254, 90 S. Ct. 1011, 25 L.Ed.2d 287 (1970)....................47

*Guptill v. City of Chattanooga, Tennessee*,
160 F.4th 768 (6th Cir. 2025)....................49

*Honda v. Bd. of Trs. of the Employees' Ret. Sys. of the State*,
108 Haw. 212, 118 P.3d 1155 (2005)....................42

*Int'l Paper Co. v. Beazley Ins. Co.*,
731 F. Supp. 3d 1013 (W.D. Tenn. 2024)....................17

*Iron Horse Energy Servs., Inc. v. S. Concrete Prods., Inc*.,
443 F. Supp. 3d 952 (W.D. Tenn. 2020)....................39, 40

*Johnson v. City of Memphis*,
617 F.3d 864 (6th Cir. 2010) (noting that claims subject to the "civil rights" exception in the GTLA include claims brought under the United States Constitution and 42 U.S.C. § 1983)....................6

*Johnson v. Memphis Light Gas & Water Div.*,
777 F.3d 838 (6th Cir. 2015)....................45

*Jones v. Bock*,
549 U.S. 199, 127 S. Ct. 910, 166 L.Ed.2d 798 (2007)....................7

*Jones v. Seas & Assocs.*,
LLC, No. 216CV02188STATMP, 2016 WL 4146192 (W.D. Tenn. Aug. 3, 2016)....................5

*Keys v. Humana, Inc.*,
684 F.3d 605 (6th Cir. 2012)....................6

*MacKay v. Rayonier, Inc.*,
25 F. Supp. 2d 47 (D. Conn. 1998)....................42

*Marvaso v. Sanchez*,
971 F.3d 599 (6th Cir. 2020)....................30

*Masiers v Arrow Transfer & Storage Co.*,
639 S.W....................32

*McCall v. Wilder*,
913 S.W.2d 150 (Tenn. 1995)....................43

*McCoy v. E. Tennessee Luxury Coach, LLC*,
No. 3:24-CV-94-DCP, 2024 WL 4916367 (E.D. Tenn. Nov. 6, 2024) .................................42

*Mohlman v. Fin. Indus. Regul. Auth.*,
977 F.3d 556 (6th Cir. 2020) .........................................................................................12

*State ex rel. Moore & Assocs., Inc. v. West*,
246 S.W.3d 569 (Tenn. Ct. App. 2005) .....................................................................9, 10

*Moore Const. Co. v. Clarksville Dep't of Elec.*,
707 S.W.2d 1 (Tenn. Ct. App. 1985) ..............................................................................23

*Moore-Pennoyer v. State*,
515 S.W.3d 271 (Tenn. 2017).........................................................................................28

*Murray v. Grissim*,
40 Tenn. App. 246, 290 S.W.2d 888 (1956)..............................................................26, 27

*National Educ. Association-Rhode Island by Scigulinsky v. Retirement Bd. of Rhode Island Employees' Retirement System*,
890 F. Supp. 1143 (D.R.I. 1995).....................................................................................48

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*,
59 S.W.3d 63 (Tenn. 2001).............................................................................................16

*Parks v. Fin. Fed. Sav. Bank*,
345 F. Supp. 2d 889 (W.D. Tenn. 2004)...................................................................41, 42, 43

*Patterson-Khoury v. Wilson World Hotel-Cherry Rd., Inc.*,
139 S.W.3d 281 (Tenn. Ct. App. 2003) ..........................................................................15

*PHI Air Med., LLC v. Corizon, Inc.*,
628 S.W.3d 460 (Tenn. Ct. App. 2021) ..........................................................................25

*Pickard v. Tenn. Water Quality Control Bd.*,
424 S.W.3d 511 (Tenn. 2013).....................................................................................10, 11

*Raffetto v. CIT Bus. Lending*,
No. CIVS08-392FCD ......................................................................................................17

*Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*,
555 F. App'x 493 (6th Cir. 2014).....................................................................................31

*Ready Mix, USA, LLC v. Jefferson Cnty.*,
380 S.W.3d 52 (Tenn. 2012)....................................................................................7, 9, 10

*Reeves v. Olsen*,
691 S.W.2d 527 (Tenn. 1985)............................................................................................9

*Rhynes v. Bank of Am.*,
No. 12-CV-2683, 2016 WL 4533035 (W.D. Tenn. Jan. 19, 2016) ....................................33

*Rice v. NN, Inc. Ball & Roller Div.*,
210 S.W.3d 536 (Tenn. Ct. App. 2006) ....................................35

*Ridgelake Apartments v. Harpeth Valley Utilities Dist. of Davidson & Williamson Ctys.*,
No. M2003-02485-COA-R3CV, 2005 WL 831594 (Tenn. Ct. App. Apr. 8, 2005) ....................................26

*Robinson v. Omer*,
952 S.W.2d 423 (Tenn. 1997) ....................................41

*Ryan v. Blackwell*,
979 F.3d 519 (6th Cir. 2020) ....................................6

*Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*,
491 F.3d 522 (6th Cir. 2007) ....................................31

*Schlansky v. United Merchants & Mfrs., Inc.*,
443 F. Supp. 1054 (S.D.N.Y. 1977) ....................................42

*Simmons v. City of Murfreesboro*,
No. M200800868COAR3CV, 2009 WL 4723369 (Tenn. Ct. App. Dec. 9, 2009) ....................................5

*Smith v. Hi-Speed, Inc.*,
536 S.W.3d 458 (Tenn. Ct. App. 2016) ....................................26

*U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*,
532 F.3d 496 (6th Cir. 2008) ....................................34

*In re Steven Curtis Hobby*,
No. 07-31772, 2007 WL 3231954 (Bankr. E.D. Tenn. Oct. 31, 2007) ....................................7

*Stratton v. United Inter-Mountain Telephone Co.*,
695 S.W.2d 947 (Tenn. 1985) ....................................32

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002) ....................................6

*Terrell Oil Corp. v. Atl. Richfield Co.*,
468 F. Supp. 860 (E.D. Tenn. 1978) ....................................13, 14

*Thomas v. State Bd. of Equalization*,
940 S.W.2d 563 (Tenn. 1997) ....................................9

*Thomas v. TransCore, LP.*,
No. 3:21-CV-1040, 2024 WL 4820782 (M.D. Pa. Nov. 18, 2024) ....................17

*Thompson v. Bank of America*,
773 F.3d 741 (6th Cir. 2014) ....................30

*Thompson v. Hensley*,
136 S.W.3d 925 (Tenn. Ct. App. 2003) ....................25, 26

*Travelers Prop. Cas. Co. of Am. v. Unitrac R.R. Materials*,
No. E2006-02679-COA-R3CV, 2007 WL 2437960 (Tenn. Ct. App. Aug. 29, 2007) ....................17, 18, 19, 20

*Turnage v. Oldham*,
346 F. Supp. 3d 1141 (W.D. Tenn. 2018) ....................44

*Valley Mech., Inc. v. BB & T Ins. Servs., Inc.*,
No. 1:13-CV-378, 2014 WL 2871475 (E.D. Tenn. June 24, 2014) ....................7, 8

*Van Winkle v. City of Lavergne*,
No. M200001784COAR3CV, 2001 WL 1141349 (Tenn. Ct. App. Sept. 27, 2001) ....................5

*Vanderbilt Univ. v. Scholastic, Inc.*,
382 F. Supp. 3d 734 (M.D. Tenn. 2019) ....................46

*Vargo v. Lincoln Brass Works, Inc.*,
115 S.W.3d 487 (Tenn. Ct. App. 2003) ....................26

*Vastoler v. Am. Can Co.*,
700 F.2d 916 (3d Cir. 1983) ....................36

*Walker v. Sunrise Pontiac–GMC Truck, Inc.*,
249 S.W.3d 301 (Tenn. 2008) ....................41

*Wallace v. Kato*,
549 U.S. 384, 127 S. Ct. 1091, 166 L.Ed.2d 973 (2007) ....................46, 47

*Williams v. Alkermes*,
2025 WL 567548 (E.D. Tenn. Feb. 20, 2025) ....................6

*Wolf Creek R.R. LLC v. Am. Ordnance LLC*,
No. 1:24-CV-01242-JDB-JAY, 2026 WL 401203 (W.D. Tenn. Feb. 12, 2026) ....................18

*Woodley v. City of Memphis, Tenn.*,
479 F. Supp. 2d 756 (W.D. Tenn. 2006) ....................16

*Wooley v. Dickson Cnty.*,
No. M2025-00607-COA-R3-CV, 2025 WL 3731058 (Tenn. Ct. App. Dec. 26, 2025) ....11, 12

**Statutes**

Government Tort Liability Act (Tenn. Code Ann. § 29–20–205) ....5

T.C.A. § 4-5-224 ....13

T.C.A. § 29-39-101 ....43

Tenn. Code Ann. § 4-5-322 ....9

Tenn. Code Ann. § 28–3–104(a)(3) ....45

Tenn. Code Ann. § 56-5-309 ....8

Tennessee Uniform Administrative Procedures Act ....8

UAPA ....9, 11

**Other Authorities**

Fourteenth Amendment ....48

Fed. R. Civ. P. 8(d)(2)–(3) ....15

FED. R. CIV. P. 9(a) ....6

Restatement (Second) of Torts Section 552 ....41

Restatement (Second) of Torts § 552(1) (1977) ....41

Rule 8(d) ....40

Rule 9 ....32

Rule 9(b) ....7, 31, 34

Rule 12 ....18

Rule 12(b)(6) ....6, 16

Rule 15(a)(2) ....50

Tenn. Comp. R. & Regs. 1700-03-02-.01. Chapter 1700-03-02 ....8

Tenn. Comp. R. & Regs. 1700-03-02-.02 ....9

Tenn. Comp. R. & Regs. 1700-03-02-.03 ........................................ 8, 9, 11

Tenn. Comp. R. & Regs. 1700-03-02-.08 ........................................ 9

Plaintiffs, by counsel, respectfully submit this Consolidated Memorandum in Opposition to the Motions to Dismiss filed by Defendants Henry County, Tennessee ("Henry County" or the "County"), Henry County Medical Center ("HCMC") (together, "Government Defendants"), and AMR of Tennessee, Inc. ("AMR") (collectively, referred to herein as "Defendants"). Docs. 29-1, 30-1, and 31-1. Plaintiffs respectfully urge the Court to deny Defendants' motions.

## INTRODUCTION

Until May, 2020, Plaintiffs were long-serving employees of HCMC, working as first-responders providing emergency medical services to residents of Henry County, Tennessee, including the period during the COVID-19 pandemic. Plaintiffs had all accumulated enough creditable service hours to become vested in the state's pension plan, the Tennessee Consolidated Retirement System ("TCRS"), and each expected to continue working as HCMC employees until such time as they had achieved full-retirement benefits. When HCMC turned over control of the County's pre-hospital ground emergency and non-emergency medical services to AMR, a private corporation, their agreement specifically contemplated that Plaintiffs would remain employees of the Government Defendants. Plaintiffs were also told expressly that nothing about their employment would change after AMR took over, and that they could expect the same working conditions, compensation and benefits that they had enjoyed for many years. Based on these representations, they decided to remain employed as first-responders for Government Defendants after AMR entered the picture, rather than seek employment elsewhere.

Plaintiffs continued providing their labor as first-responders for Government Defendants for over ***four and a half years***. Then, in January, 2025, Henry County informed them of a determination by TCRS that, both contractually and as a matter of practical control and direction, AMR had been Plaintiffs' common law employer since May, 2020 and not the Government

Defendants. As AMR is not a covered employer under TCRS, this determination would have a profound and devastating impact on Plaintiffs retirement prospects. Almost five years of Plaintiffs' creditable service and salary levels, the very retirement benefit Defendants promised them would be maintained after contracting with AMR, was retroactively erased. All the while, Defendants received the fruit of Plaintiffs' experience and labor as first-responders without having to pay them any of the retirement benefits they were promised. Now, Defendants move to dismiss Plaintiffs' claims, stating that they are wholly without legal or equitable recourse to rectify these wrongs. The Court should reject Defendants' attempt to evade liability based solely on the pleadings and permit the Plaintiffs to proceed with their effort to remedy this unjust result.

## SUMMARY OF THE ACTION

Defendants' motions rest on a fundamental mischaracterization of Plaintiffs' claims. Plaintiffs are not asking this Court to order the TCRS to award retirement credit that Tennessee law forbids. Nor do Plaintiffs contend that Defendants had unilateral power to dictate TCRS eligibility. Plaintiffs' claims are far more straightforward.

The facts are not complicated. Plaintiffs are emergency medical technicians ("EMTs") and first-responders employed for many years by HCMC, a "qualified" government employer participating in TCRS. ¶¶2, 36-39, 40-50.[1] By 2020, all Plaintiffs were fully-vested participants in TCRS, and intended to retire after reaching full-service retirement benefits. ¶¶51-52.

In May, 2020, HCMC contracted to give exclusive franchise over its ambulance and ground services to AMR (the "May 2020 Agreement"). ¶¶55-58. The May 2020 Agreement granted AMR authority to direct and control all work performed by employees providing these services. ¶55.

[1] All references to "¶" are to the Plaintiffs' First Amended Complaint ("FAC") dated September 22, 2026 (Dkt. 22).

HCMC and AMR crafted the May 2020 Agreement to assure that they would retain Plaintiffs' skill and expertise in providing emergency-medical services as employees of HCMC. ¶¶56-58. Defendants knew Plaintiffs were vested in TCRS and wanted to remain employed by a "qualified" employer so they could continue to accumulate credit towards full-retirement benefits. *Id.* AMR, meanwhile, was incentivized to retain experienced and skilled EMTs such as Plaintiffs and avoid the costs associated with replacing them. *Id.* HCMC represented to Plaintiffs they would continue to receive retirement benefits as government employees, while AMR warranted it would operate emergency services "as it is today." *Id.* at ¶58. No Defendant sought TCRS's opinion on the impact of the May 2020 Agreement. ¶59.

Plaintiffs provided their services as EMTs under the May 2020 Agreement until October, 2024, when a private entity acquired control of HCMC. ¶¶61-62. The Henry County mayor stated publicly the County have to hire Plaintiffs so they could maintain their retirement benefits in TCRS. *Id.* To this end, Henry County entered a Staffing Services Agreement with AMR ("October 2024 Agreement") and passed a resolution making Plaintiffs its employees. *Id.* The October 2024 Agreement mimicked the May 2020 Agreement in that Plaintiffs would continue to receive pay and retirement (*i.e.* TCRS) benefits as Henry County employees, but under AMR's control, supervision, and agreement to reimburse Plaintiffs' employment expenses. *Id.*

Unlike in 2020, Henry County sought review of the October 2024 Agreement by the Tennessee Comptroller of the Treasury. ¶62. In early 2025, TCRS opined that the May 2020 and October 2024 Agreements (collectively, "the Agreements") had the effect of placing Plaintiffs under the employ of AMR, which was not a qualified employer under TCRS. ¶¶63-64.

In February, 2025, after TCRS issued its legal opinion, the Henry County mayor told Plaintiffs the matter is still "being investigated," but he had been informed it had been illegal for

Plaintiffs to participate in TCRS as it would "jeopardize the entire system," and he did not see how they could prove TCRS is wrong. ¶66. The mayor also represented the County would "make them whole" and return to them all contributions made on their behalf. ¶¶66-67. In March, 2025, the mayor admitted to Plaintiffs that the May 2020 Agreement said they were AMR employees, and that if they "had legal review it back then, the problem would've been resolved a lot quicker." ¶67. The mayor again assured Plaintiffs they would receive back "everything," including contributions made on their behalf. *Id.*

Plaintiffs appealed TCRS's determination in May, 2025. ¶69. On June 4, 2025, the TCRS director affirmed that Plaintiffs had been AMR employees since May, 2020, finding that:

> (1)AMR had exclusive rights and responsibilities under the Agreement over ground ambulance services which the Plaintiffs provided; (2) AMR had the ultimate authority to exercise discretion and control over Plaintiffs' work as EMTs; (3) although Plaintiffs received paychecks from HCMC, their wages and benefits (including contributions to TCRS) were ultimately paid by AMR which reimbursed HCMC for these costs; and (4) TCRS risked being stripped of its status as a qualified plan under IRS Code if Plaintiffs were allowed to participate in TCRS under these circumstances.

¶70. Plaintiffs had the option to seek further administrative review through a contested case proceeding, but deemed it a futility given the definitiveness of the director's findings that TCRS lacked authority to distribute the employer contributions to Plaintiffs, and that keeping Plaintiffs eligible under these circumstances posed a risk to the entire system. ¶¶70-71.

In January, 2026, TCRS formally adjusted Plaintiff's service credits and salary rates, and reimbursed Plaintiffs all of their employee contributions made since May 15, 2020. ¶73. Government Defendants received back the employer contributions made over the same time period in December, 2025, but never remitted them back to Plaintiffs as warranted. ¶¶72, 74.

With both the May 2020 and October 2024 Agreements (collectively referred to herein as "the Agreements"), Defendants explicitly told Plaintiffs that they would continue to receive a

retirement benefit. ¶¶61, 79. Defendants took the benefit of Plaintiffs' work under that arrangement for nearly five years. And Defendants operated the arrangement in a way that ultimately wiped out the very retirement benefits it was supposed to protect.

Defendants now ask the Court to treat TCRS's determination as wiping the slate clean for them, too. It does not. Defendants designed, represented, implemented, and benefited from the arrangement, and cannot escape responsibility because a state agency later applied the law to the structure they built. The TCRS determination was not an unforeseeable intervening event—it was the realization of the precise risk the arrangement was supposed to prevent. TCRS's decision also does not absolve Defendants of their own tortious acts, like breaching their Agreements to fulfill Plaintiffs' terms of employment and inducing Plaintiffs to remain employed as EMTs for nearly five years to their own detriment. Finally, the TCRS decision does not alter the fact that AMR unjustly profited from Plaintiffs' labor without providing the required retirement benefits, and equity in good conscience cannot abide such a result.

Plaintiffs assert claims against all Defendants which may be alternative to one another and inconsistent, which is permitted at this stage of the pleadings.[2] Plaintiffs concede for the purposes of Defendants' motions that Government Defendants are immune from suit for breach of implied contract (Count IV) and unjust enrichment (Count VI) and therefore agrees to dismiss these claims as to Henry County and HCMC. However, Government Defendants do not enjoy sovereign immunity under the Government Tort Liability Act (Tenn. Code Ann. § 29–20–205) for Plaintiffs' third-party beneficiary breach of contract or their § 1983 claim.[3]

---

[2] *See Jones v. Seas & Assocs.*, LLC, No. 216CV02188STATMP, 2016 WL 4146192, at *5 (W.D. Tenn. Aug. 3, 2016).

[3] *See Simmons v. City of Murfreesboro,* No. M200800868COAR3CV, 2009 WL 4723369, at *3 (Tenn. Ct. App. Dec. 9, 2009) (stating the GTLA does not grant governmental immunity breach of contract actions); *Van Winkle v. City of Lavergne*, No. M200001784COAR3CV, 2001 WL

## STANDARD OF REVIEW

A complaint survives Rule 12(b)(6) when its well-pleaded factual allegations, accepted as true, state a plausible claim for relief.[4] A motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, accept its well-pleaded allegations as true, and draw all reasonable inferences in favor of the plaintiff.[5] Accordingly, to survive a motion to dismiss, a plaintiff must allege facts that are sufficient to "raise a right to relief above speculative level" and "to state a claim to relief that is plausible on its face."[6] Additionally, "if a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied."[7] The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged.[8]

Plaintiffs' fraudulent inducement claim against AMR survives a Rule 12(b)(6) challenge if it states with particularity the circumstances constituting fraud. FED. R. CIV. P. 9(a); *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993). "The Sixth Circuit reads this rule liberally,

---

1141349, at *3 (Tenn. Ct. App. Sept. 27, 2001) (recognizing that "the GLTA does not cover damages resulting from a breach of contract."); *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010) (noting that claims subject to the "civil rights" exception in the GTLA include claims brought under the United States Constitution and 42 U.S.C. § 1983).

[4] *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57, 570 (2007)

[5] *Carrier Corp. V. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012); s*ee also Courtright c. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

[6] *Williams v. Alkermes*, 2025 WL 567548, at *2 (E.D. Tenn. Feb. 20, 2025) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) and citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009)); *see also Carrier Corp.*, 673 F.3d at 44.

[7] *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012).

[8] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L.Ed.2d 90 (1974)).

however, requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id*. (internal citations and quotations omitted). The complaint is sufficient if it "places the defendant on sufficient notice of the misrepresentation, allowing the defendants to answer, addressing in an informed way plaintiffs [sic] claim of fraud." *Id*. (internal quotations and citations omitted). Rule 9(b) is relaxed concerning matters speaking to the Defendants' state or condition of mind, which can be "averred generally." *In re Steven Curtis Hobby*, No. 07-31772, 2007 WL 3231954, at *2 (Bankr. E.D. Tenn. Oct. 31, 2007).

## ARGUMENT

### I. NO REQUIREMENT TO EXHAUST STATE ADMINSTRATIVE REMEDIES

Failure to exhaust administrative remedies is an affirmative defense the defendant must "plead and prove." *Jones v. Bock,* 549 U.S. 199, 204, 127 S. Ct. 910, 166 L.Ed.2d 798 (2007). Defendants' exhaustion argument fails at each step. No statute requires exhaustion by its plain words (Part A). The factors that guide the Court's discretion weigh against requiring it (Part B). And every authority Defendants cite either involved a plaintiff who challenged an agency's decision, which Plaintiffs do not do here, or did not decide exhaustion at all (Part C).

#### A. No Statute Requires Exhaustion by Its Plain Words

Tennessee courts have consistently held that "unless the statute providing for an administrative remedy requires exhaustion 'by its plain words,' an administrative appeal is not mandatory." *Ready Mix, USA, LLC v. Jefferson Cnty.*, 380 S.W.3d 52, 63 (Tenn. 2012); *see also Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 236 (Tenn. 2010) (citing *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 838 (Tenn. 2008)). Courts apply this requirement strictly: the statute itself must say that exhaustion is required before claims can be brought in court. *Valley*

*Mech., Inc. v. BB & T Ins. Servs., Inc.*, No. 1:13-CV-378, 2014 WL 2871475, at *6 (E.D. Tenn. June 24, 2014). Here there is no such statute plainly requiring it, so exhaustion is not required.

In *Valley Mechanical*, the defendants argued that plaintiff could not sue under Tenn. Code Ann. § 56-5-309 without first exhausting the administrative process that the statute and its regulations established. *Id.* at *7. The court acknowledged that the process existed but could not "conclude § 56-5-309 contains a hard-and-fast requirement that parties [must] exhaust administrative remedies before filing suit." *Id.* The defendants cited no case requiring exhaustion under that statute, and the statute's permissive language, which "provides that a party 'may' avail itself of that process and 'may' appeal to the Commissioner," made the process an option rather than a condition precedent to suit. *Id.* The statute's plain words did not require exhaustion. *Id.*

Like the *Valley* defendants, Defendants point to an administrative scheme, namely the Tennessee Uniform Administrative Procedures Act ("UAPA") and the TCRS rules in Tenn. Comp. R. & Regs. 1700-03-02. But they identify no statute that requires exhaustion by its plain words, and no case requiring exhaustion of claims like Plaintiffs'. The existence of an administrative process is not "a hard-and-fast requirement that parties exhaust administrative remedies before filing suit." *Valley Mech.*, 2014 WL 2871475, at *7.

The TCRS rules confirm that exhaustion here is not mandatory. The rule governing correction of employer participation errors provides that "[a]ny person who is aggrieved by an action or decision made within the discretion or control of the TCRS, **may** appeal the action or decision to the director." Tenn. Comp. R. & Regs. 1700-03-02-.03 (emphasis added). That rule creates an appeal route for a defined category of decisions; it does not require every TCRS claimant to exhaust administrative remedies before going to court. *See* Tenn. Comp. R. & Regs. 1700-03-02-.01. Chapter 1700-03-02 also distinguishes contested cases from lesser appeals, which are

reviewed through an informal conference when the director determines that the aggrieved individual is not entitled to a contested-case proceeding. Tenn. Comp. R. & Regs. 1700-03-02-.02. Even then, the language is permissive: "should an individual wish to appeal the director's findings he shall be informed by the director of the possibility of further administrative review through a contested case proceeding." Tenn. Comp. R. & Regs. 1700-03-02-.08. Nothing in the rules requires that any of these procedures be completed before judicial action. Here, TCRS determined that, since at least May 2020, Plaintiffs were contract employees of third-party AMR providing emergency medical services to Henry County, Tennessee. Plaintiffs appealed, and TCRS granted an informal conference, indicating that the director treated the matter as a lesser appeal rather than a contested case. *See* Tenn. Comp. R. & Regs. 1700-03-02-.03.

UAPA does not change the analysis. Defendants rely on Tenn. Code Ann. § 4-5-322, which entitles a person aggrieved by a final decision in a contested case to judicial review (*see Evans-Barken v. Madison Cnty., Tennessee*, No. W2020-01101-COA-R3-CV, 2022 WL 1487773, at *4 (Tenn. Ct. App. May 11, 2022)), but Plaintiffs do not seek review of any TCRS decision; they sued the parties that injured them. There is no contested case under UAPA.

**B. The Court Should Not Exercise Its Discretion to Require Exhaustion**

When a statute does not mandate exhaustion, a court may still require it in its discretion. *Ready Mix*, 380 S.W.3d at 64 ("Absent a statutory mandate, the exhaustion of the administrative remedies doctrine is a matter of judicial discretion"); *Bailey*, 303 S.W.3d at 236 ("Where exhaustion is not mandatory, it is within a court's discretion whether to dismiss a case for failure to exhaust administrative remedies"); *Thomas v. State Bd. of Equalization*, 940 S.W.2d 563, 566 n.5 (Tenn. 1997); *Reeves v. Olsen*, 691 S.W.2d 527, 530 (Tenn. 1985); *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569, 577 (Tenn. Ct. App. 2005)); *Chattanooga-Hamilton Cnty.*

*Hosp. Auth. v. UnitedHealthcare Plan of the River Valley, Inc.*, 475 S.W.3d 746, 758 (Tenn. 2015) (even where the statute "is worded permissively") (internal citations omitted). But exhaustion is not required when the party seeking judicial review presents questions of law rather than questions of fact (*See Ready Mix*, 380 S.W.3d at 64), or when "the administrative remedy would be inadequate because the agency does not appear empowered to grant effective relief." *Pickard v. Tenn. Water Quality Control Bd.*, 424 S.W.3d 511, 523 (Tenn. 2013). Courts also consider whether the agency has shown bias or predetermined the issue and whether judicial review would prematurely interrupt the administrative process. *Id.*; *West*, 246 S.W.3d at 577–78. The court's decision will stand unless it "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *Bailey*, 303 S.W.3d at 237 (quoting *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)).

Each factor weighs against requiring exhaustion here. *First*, Plaintiffs' claims present questions about their legal rights under their employment arrangements. *See Ready Mix*, 380 S.W.3d at 65 ("The applicability of the ordinance to the operations of the Company presented a question of law and, therefore, did not require the exhaustion of administrative remedies") (citing *Bracey v. Woods*, 571 S.W.2d 828, 830 (Tenn. 1978); *Fentress Cnty. Bank v. Holt*, 535 S.W.2d 854, 857 (Tenn. 1976)). They ask whether Defendants breached Plaintiffs' terms of employment, either directly or as third-party beneficiaries; whether AMR was unjustly enriched; whether AMR tortiously interfered with Plaintiffs' business relationship; whether AMR fraudulently or negligently made misrepresentations that induced Plaintiffs to accept their offers of employment; whether AMR is estopped from depriving Plaintiffs of the benefits they were promised; and whether Government Employers deprived Plaintiffs of property rights without due process.

*Second,* the administrative remedy is inadequate because neither TCRS nor any other agency has the power to grant the relief Plaintiffs seek. *Pickard*, 424 S.W.3d at 523. Neither TCRS nor an administrative law judge can adjudicate a contract, and neither has the equitable power to decide quasi-contractual claims. *Third*, TCRS has shown bias or predetermined the issue: the TCRS Director framed the decision as an extinction-level event for the System. ¶70. *Fourth*, this litigation cannot prematurely interrupt any administrative process under UAPA or the TCRS rules, because that process has already concluded. The Court should decline to exercise its discretion to compel Plaintiffs to pursue administrative remedies in lieu of suit.

**C. Defendants' Authorities Do Not Apply**

Defendants' arguments share a single flaw: they treat this case as a challenge to TCRS's eligibility decision. It is not. TCRS is not a party. Plaintiffs accept TCRS's decision and do not ask the Court to revisit or overturn it. Instead, Plaintiffs sue the parties whose conduct led to that decision, for breaking the promises made to induce Plaintiffs to remain in their job positions.

**1. Defendants identify no statute that mandates exhaustion.**

AMR and Henry County both acknowledge that "exhaustion is mandatory where the statute providing the remedy requires it by its plain words." *See* Doc 31-1 at 5 (citing *Valley Mech.*, 2014 WL 2871475, at *5; *see also Bailey*, 303 S.W.3d at 236); Doc. 30-1 at 18–19. Yet neither identifies a statute that, by its plain words, requires exhaustion of TCRS-related claims, much less of breach-of-contract and tort claims against an employer. Tenn. Comp. R. & Regs. 1700-03-02-.03, which is a regulation, not a statute, and is permissive in any event. Henry County's reliance on *Wooley v. Dickson County* only confirms the point. *Wooley* explains that "the doctrine of exhaustion of administrative remedies was discretionary because the plaintiff in that case did not proceed on a

statute mandating exhaustion." *Wooley v. Dickson Cnty.*, No. M2025-00607-COA-R3-CV, 2025 WL 3731058 at *2 (Tenn. Ct. App. Dec. 26, 2025). No statute mandates exhaustion here.

**2. Defendants' cases involved direct challenges to agency decisions**

AMR invokes the "long-settled rule of judicial administration that no one is entitled to relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted," whose "central purpose" is "the avoidance of premature interruption of the administrative process." *Mohlman v. Fin. Indus. Regul. Auth.*, 977 F.3d 556, 559–60 (6th Cir. 2020) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938)). Plaintiffs do not dispute that exhaustion is required in some cases. But the plaintiff in *Mohlman* sued the agency itself over its decision before exhausting administrative remedies. The equivalent here would be a suit against TCRS over its ruling that Plaintiffs do not qualify for retirement benefits. Plaintiffs have brought no such claim, and TCRS is not a party.

AMR and Henry County also argue that Tennessee favors exhaustion, citing *Cantrell v. Walker Die Casting, Inc.*, 121 S.W.3d 391, 395 n.2 (Tenn. Ct. App. 2003). But exhaustion is favored only where it is required, and it was required in *Cantrell* because the plaintiff was challenging the denial of his benefits. *Cantrell*, 121 S.W.3d at 392. Plaintiffs do not challenge the denial of their benefits; they challenge the wrongful conduct that led to it.

**3. *Crawford* and *Baumgartner* did not decide necessity of exhaustion.**

Both AMR and Henry County rely on *Crawford v. Tennessee Consolidated Retirement System* and *Baumgartner v. Tennessee Consolidated Retirement System* to argue that TCRS's appeal process must be exhausted. Neither case turned on exhaustion, and do not apply here.

In *Crawford*, the court applied to TCRS claims the rule that "[a] declaratory judgment shall not be rendered concerning the validity or applicability of a statute, rule or order unless the

complainant has petitioned the agency for a declaratory order and the agency has refused to issue a declaratory order." *Crawford v. Tenn. Consol. Ret. Sys.*, 732 S.W.2d 293, 295 (Tenn. Ct. App. 1987). *Crawford*, 732 S.W.2d at 295. The court expressly treated exhaustion as moot because "the Legislature, by enacting T.C.A. § 4-5-224, has determined that the Agency has primary original jurisdiction of the controversy." *Id.* at 298. It concluded that "both the statute and good judgment require that plaintiffs first seek from the Board of Trustees a definitive ruling on the issues.... if the ruling should be unsatisfactory to plaintiffs, they have their statutory right of judicial review." *Id.* But the holding in *Crawford* does not apply here. First, TCRS's primary jurisdiction would matter only if Plaintiffs were challenging TCRS's ruling; they are not, but have sued their former employers regarding their conduct instead. Second, *Crawford*'s rule governs declaratory-judgment actions, and Plaintiffs seek damages.

*Baumgartner* is even further afield. Defendants cite it without a pin cite, and the only arguably relevant passage is the procedural history, which recounts the steps the parties took to reach the court without any analysis. *Baumgartner v. Tenn. Consol. Ret. Sys.*, No. M2017-01715-COA-R3-CV, 2018 WL 4802472, at *1–2 (Tenn. Ct. App. Oct. 3, 2018). The court did not say whether those steps were mandatory. *Id.* at *2.

**4. The primary-jurisdiction doctrine does not apply**

AMR argues that the Court lacks jurisdiction because "whether Defendants caused a compensable loss would require the Court to speculate and assume, revisit, or effectively adjudicate the correctness and consequences of the TCRS Director's eligibility determination" (Doc. 31-1 at p.7), relying on *Terrell Oil Corp. v. Atlantic Richfield Co.* and the primary-jurisdiction doctrine. *Terrell Oil Corp. v. Atl. Richfield Co.*, 468 F. Supp. 860, 863 (E.D. Tenn. 1978). The argument fails for three reasons. First, the court in *Terrell Oil* stated that defendant was

not entitled to dismissal because “plaintiff was not required to first exhaust its administrative remedies prior to commencing this action.” *Id*. at 862–63. Second, as *Terrell Oil* explains, the doctrine means that the pending court action is "stayed until the administrative officials have had (the) opportunity to act." TCRS has acted, and Plaintiffs accept its decision. Lastly, the doctrine reaches only a question "within the competency of" the agency, that is, a challenge to the agency's decision. *Id.* (explaining that the "doctrine [of primary jurisdiction] requires the parties in a lawsuit to resort first to an administrative agency before they may obtain a judicial adjudication involving a question within the competency of that agency"). Plaintiffs do not challenge TCRS's decision or its competency; they ask the Court to decide whether Defendants' wrongful conduct caused the outcome. The Court has jurisdiction to hear this case.

**5. Futility is raised in the alternative, and AMR misstates its standard**

AMR argues that bare assertions cannot sustain a futility exception and that the exception carries a "high standard." Doc. 31-1 at 6–7 (citing *Bailey*, 303 S.W.3d at 236). The standard requires more than a bare assertion, but it is not as demanding as AMR claims. As shown above, Plaintiffs must make a clear and positive showing, and they have done so by satisfying the *Fallick* factors. *See* FAC ¶¶ 7, 71. AMR misreads *Bailey*.

AMR also argues that futility cannot apply because "Plaintiffs are attempting to recover from Defendants who had no authority over the underlying TCRS decision and were not even parties to that proceeding," (Doc 31-1 at 7) and because futility applies only "when the aggrieved party believes they cannot obtain satisfaction before the administrative agency evaluating their claim and therefore go directly to the Courts to litigate their legal issue." *Id.* (citing *City of Goodlettsville v. Priceline.com, Inc.*, 605 F. Supp. 2d 982, 991 (M.D. Tenn. 2009)). Plaintiffs agree that futility likely is not needed here, but only because exhaustion does not apply at all: TCRS has

no authority over claims arising from the parties' employment agreements and the promises made to keep Plaintiffs in their positions. Plaintiffs raise futility in the alternative, should the Court conclude that exhaustion applies. *See* Fed. R. Civ. P. 8(d)(2)–(3).

## II. TCRS'S DECISION DOES NOT CONSTITUTE A SUPERSEDING CAUSE

Defendants repeatedly cast TCRS's determination as an independent event that broke the chain of causation. But calling an administrative decision "superseding" does not make it so.

Tennessee law is clear on this point. In *McClenahan v. Cooley*, the Tennessee Supreme Court held that a cause need not be the sole, last, or nearest cause of an injury, provided it was a substantial factor in producing the result. 806 S.W.2d 767, 775–76 (Tenn. 1991). Also, an intervening act does not break the chain of causation when it was reasonably foreseeable. *Patterson-Khoury v. Wilson World Hotel-Cherry Rd., Inc.*, 139 S.W.3d 281, 289–90 (Tenn. Ct. App. 2003); *see also Cotten v. Wilson*, 576 S.W.3d 626, 639 (Tenn. 2019) ("[A]n intervening event that is a normal response created by the defendant's negligence will not qualify as a superseding, intervening cause so as to relieve the original wrongdoer of liability.").

The Tennessee Supreme Court reiterated those principles in *Haynes v. Hamilton County*, holding that negligent governmental conduct in beginning or continuing a police pursuit could be a proximate cause of injuries ultimately inflicted through the fleeing driver's later conduct. 883 S.W.2d 606, 612–13 (Tenn. 1994). *Doe v. Linder Construction Co*. does not help Defendants. There, the Court held that an extraordinary sequence of criminal acts was unforeseeable on the undisputed summary-judgment record, and it distinguished *McClenahan* because the evidence there supported foreseeability. 845 S.W.2d 173, 181–84 (Tenn. 1992).

Here, Plaintiffs allege that preserving their status as employees of Government Defendants, *i.e.* TCRS-qualified employers, was a central purpose of the employment structure Defendants

created. ¶¶56-58; 61-62; 129. TCRS did not build that structure. It was not given the opportunity to examine the structure until nearly five years after Defendants started carrying out its terms. Once TCRS examined the structure, it concluded that substantively, Plaintiffs worked for AMR rather than for an eligible governmental employer. ¶¶70-71. TCRS's decision does not become superseding merely because TCRS made it. The loss of Plaintiffs' retirement benefits was not a bolt from the blue—it was the precise risk the Defendants' arrangements were supposed to prevent. ¶¶56-58; 61-62; 98-99; 107. To the extent Defendants question whether the TCRS decision was foreseeable, whether Defendants' conduct was a substantial factor, and whether the decision operated as a superseding cause are fact questions that cannot be resolved against Plaintiffs under Rule 12(b)(6). *Cooley*, 806 S.W.2d at 775–76 (proximate cause and superseding cause ordinarily present jury questions when reasonable persons could disagree). Moreover, causation, including proximate cause, is a matter for the fact finder rather than a motion to dismiss. *Woodley v. City of Memphis, Tenn.*, 479 F. Supp. 2d 756, 761 (W.D. Tenn. 2006). This argument is not grounds to deny Plaintiffs' relief at this stage.

## III. PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT AS THIRD-PARTY BENEFICIARIES (COUNT II) (AGAINST ALL DEFENDANTS)

To state third-party beneficiary contract claim, Plaintiffs must allege:

> (1)The parties to the contract have not otherwise agreed; (2) Recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties; and (3) The terms off the contract or the circumstances surrounding performance indicate that either: (a) the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or (b) the promisee intends to give the beneficiary the benefit of the promised performance.

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 70 (Tenn. 2001). "The evidence of intent to confer a benefit must be clear and direct[.]. *Id.* Plaintiffs allege they are third-party beneficiaries of the May 2020 Agreement and the October 2024 Agreement. As

explained below, these Agreements are as much about labor sharing between Defendants as they are about the provision of emergency services in Henry County.

"Part (1) of the test provides that courts should honor any expression of intent by the parties to reserve to themselves the benefits of the contract." *Travelers Prop. Cas. Co. of Am. v. Unitrac R.R. Materials*, No. E2006-02679-COA-R3CV, 2007 WL 2437960, at *4 (Tenn. Ct. App. Aug. 29, 2007). Plaintiffs specifically allege that they are not expressly excluded from the benefits of either the May 2020 Agreement or the October 2024 Agreement. ¶92. Defendants seek to nullify this allegation by pointing to provisions stating that the Agreements bind and benefit the parties and their successors or permitted assigns.[9] That language is not the same as a clause expressly declaring that no third-party has any enforceable rights.[10] The Court must read the agreements as a whole rather than decide intended-beneficiary status based only on provisions about parties, successors, or assigns. *Int'l Paper Co. v. Beazley Ins. Co*., 731 F. Supp. 3d 1013, 1044 (W.D. Tenn. 2024) (In determining whether an ambiguity exists, the whole instrument must be considered, and not in isolated part, such as a single sentence or paragraph) (internal quotations and citations

[9] *See, e.g.,* Doc 31-1 at 9 (citing Doc 31-3 at § 18 and Doc 31-4 at § 15(d) ("This Agreement…(d) shall be binding on and inure to the benefit of the parties and their respective successors and permitted assigns.")).

[10] *See, e.g., Advanced Ground Sys. Eng'g, Inc. v. United Airlines Inc.*, No. IP00-0076-C-M/S, 2003 WL 21766574, at *5 (S.D. Ind. July 1, 2003), *aff'd sub nom. Advanced Ground Sys. Eng'g, Inc. v. RTW Indus., Inc.*, 388 F.3d 1036, 1043 (7th Cir. 2004) (contract language stating "no other person or entity will be deemed a third-party beneficiary of this Agreement" deemed a clear expression of the parties' intent to exclude third parties as beneficiaries); *Raffetto v. CIT Bus. Lending,* No. CIVS08-392FCD KJMPS, 2010 WL 891615, at *5 (E.D. Cal. Mar. 8, 2010) ("This Agreement is solely for the benefit of Lender and Borrower and no third parties shall have any rights herein or hereunder."); *Thomas v. TransCore, LP.*, No. 3:21-CV-1040, 2024 WL 4820782, at *2 (M.D. Pa. Nov. 18, 2024) (contract language stating that "[n]othing provided herein will create any rights in any third party as provided in the Agreement or any obligation on the part of the Commissioner to any third party" expressly rejects any third-party beneficiaries).

omitted). Not only do Defendants raise a question of fact about the parties' meaning or intent of this language which is inappropriate to resolve on the pleadings under Rule 12, but on its face the language does not satisfy Part (1) because it does not expressly exclude the ability of a third-party from seeking to enforce its terms. *See Wolf Creek R.R. LLC v. Am. Ordnance LLC*, No. 1:24-CV-01242-JDB-JAY, 2026 WL 401203, at *5 (W.D. Tenn. Feb. 12, 2026) (when a contract's terms are ambiguous such that "it is susceptible to more than one interpretation and reasonably intelligent persons could come to different conclusions as to the meaning of the contract," it presents a fact question not appropriately determined on Rule 12).

"Part (2) ensures that third-party beneficiaries will be allowed to enforce the contract only when enforcement would further the parties' objectives in making the agreement." Under this part, "courts should look to what the parties intended to accomplish by their agreement, and a third party should not be deemed an intended beneficiary if so doing would undermine the parties' purposes." *Unitrac R.R. Materials*, 2007 WL 2437960, at *4.

Plaintiffs allege that Defendants HCMC and AMR entered the May 2020 Agreement intending that Plaintiffs remain employed to provide their labor as first-responders in Henry County. ¶86. That Agreement states expressly that, although AMR would assume exclusive franchise to supply "appropriate" emergency services in Henry County,[11] it needed qualified and experienced EMTs and paramedic personnel to supplement its existing workforce. *Id.* The May 2020 Agreement contemplates that Plaintiffs would provide their labor on condition that AMR

[11] *See* Doc 31-3 (Exhibit 1) at pg.1 ("**WHEREAS**, in order to assure that residents and visitors within HCMC's jurisdiction receive appropriate Ground Services when required as a result of injury or illness, HCMC desires to assign all rights to AMR to provide the specific Ground Services described herein, and AMR desires to provide such Ground Services, subject to the terms and conditions specified herein."); id. at § 1 ("**1. Ground Services Operating Area**. HCMC hereby grants AMR the right to provide exclusive Ground Services within Henry County, Tennessee").

would reimburse HCMC for the costs of employing Plaintiffs, including maintaining the compensation and benefits they previously enjoyed as EMTs with HCMC. *Id.* This language was deliberate, as HCMC knew that Plaintiffs wished to maintain their TCRS benefits and would have sought employment with another qualified employer if private entity AMR hired them directly. ¶56. This arrangement allowed AMR to benefit from Plaintiffs' labor without incurring the costs to replace their decades of experience in emergency medicine. *Id.* Allowing Plaintiffs to act as third-party beneficiaries to the May 2020 Agreement would effectuate the parties' intent that HCMC retain Plaintiffs' labor as EMTs so AMR could lease them, reimburse the costs of employment, and avoid the costs to hire replacement personnel. ¶¶56-58; 86-87; 89.

Likewise, the FAC alleges that the October 2024 Agreement evidences the same intent that Plaintiffs remain employed by Henry County and available to provide their labor to AMR subject to it reimbursing employment expenses. ¶¶88-89. Henry County explicitly stated as much when the mayor pitched the October 2024 Agreement to the Henry County Budget Committee. ¶62. Both Agreements are alleged to have incentivized the Plaintiffs to remain employed by Government Defendants under their existing terms and conditions of employment (including retirement benefits), such that they could be leased to AMR to meet its personnel needs without AMR having to incur the expense of replacing such long-tenured first responders. ¶¶3, 56, 57, 62, 86-87, 89. Plaintiffs' allegations satisfy Part (2).

Part (3) focuses "upon the promisee's intent, and not the promisor's, because [i]n third party cases, the right of [the third] party does not depend upon the purpose, motive, or intent of the promisor. The motivating cause of [the promisor's] making the promise is usually his desire for the consideration given by the promisee." *Unitrac R.R. Materials*, 2007 WL 2437960, at *4.

Subsection (a) to Part (3) focuses on whether the promisee is "motivated by a self-interested intent to discharge the duty owed to the third party." *Id.*

Plaintiffs allegation establish that AMR's contractual obligations to both HCMC and later Henry County were intended to "satisfy or discharge a duty" the Government Defendants owed to Plaintiffs. Government Defendants were motivated to continue satisfying Plaintiffs' terms and conditions of employment so they would remain in service as EMTs for the County throughout the duration of the Agreements. ¶¶86-87. To fulfill its exclusive franchise, AMR contracted for the ability to lease Plaintiffs from Government Defendants, in which case AMR obligated itself to cover their costs of employment. ¶¶55-58; 61-62; 86-87.[12] If the Agreements were not meant to benefit Plaintiffs, then they would not need to specify that their terms of employment with Government Defendants would continue even if their labor was leased to and directed by AMR, in which case AMR would reimburse for these costs. AMR makes this exact point in its motion to dismiss when it acknowledges that under the Agreements it "assumed responsibility for managing the personnel used to provide those services" and "agreed to reimburse the County for their wages, payroll taxes, insurance, benefits, and retirement share." *See* Dkt 30-1 at 10-11; ¶¶ 55-57, 88. Indeed, AMR could have hired Plaintiffs directly, but that would have undermined the parties' intent that they retain the retirement benefits they enjoy as HCMC/Henry County employees. Government Defendants retention of Plaintiffs' labor as EMTs so they could be leased

---

[12] *See* Doc 31-3 (Exhibit 1) at pg.1-2 ("**3. AMR Personnel.** AMR reserves the right to adjust personnel and staffing levels to the extent it seems necessary to provide the Services described herein. AMR will be responsible for all management and personnel issues related to employees hired by AMR. …AMR may also use personnel leased from third parties, including HCMC, provided it has received prior written approval from HCMC."); pg. 2 (stating that AMR agreed it would not be "requesting funding or subsidy of any type from HCMC to cover any costs or any shortfalls from the provision of any Services or any obligations pursuant to this Agreement.").

to AMR and reimbursed for the costs associated with their employment is evidence of a "clear and direct" intent by the parties to give Plaintiffs the benefit of their labor Agreement.

Plaintiffs were not random members of the public who happened to benefit indirectly from the parties' ambulance-services agreements. They were the workforce the Agreements were dependent upon. Both Agreements contemplated AMR's use of personnel leased from Government Defendants, made the Government Defendants responsible for their wages and benefits, and required AMR to reimburse Plaintiffs' direct employment costs, including a "retirement share." ¶57, 88. Those provisions plausibly support the inference that the contractual arrangements directly concerned an identifiable class of employees in the Plaintiffs.

### A. Plaintiffs Allege Defendants Failed to Fulfill the Terms of Employment Underlying the Agreement

Whether a party has fulfilled its obligations under a contract or is in breach of the contract is a question of fact. *Demarest v. Kovacevich*, No. 3:23-CV-00932, 2025 WL 2375372, at *4 (M.D. Tenn. Aug. 14, 2025) (citing *Forrest Const. Co., LLC v. Laughlin,* 337 S.W.3d 211, 220, 225 (Tenn. Ct. App. 2009) (internal citations omitted)). The FAC alleges that Defendants breached obligations owed to third-party Plaintiffs as beneficiaries under both Agreements.

By May 2020, every Plaintiff was a vested TCRS member. Each had made it a goal to retire as an EMT in Henry County with full-service retirement benefits. ¶¶ 51–52. HCMC and AMR wrote the Agreement with those interests in mind. It expressly allowed AMR to "use personnel leased from third parties, including HCMC." The parties included this clause because HCMC knew Plaintiffs were vested but had not yet earned enough service for full-service retirement, and knew they wanted to stay in TCRS. AMR also wanted to keep these experienced EMTs. ¶¶ 56; 86. Under this carve-out, HCMC and AMR agreed that Plaintiffs would stay on HCMC's payroll. HCMC would be "solely responsible for the payment of any and all wages and benefits to Plaintiffs,

including the reporting of service hours and remittance of contributions to TCRS." In return, AMR would reimburse HCMC for "all wages, payroll taxes, insurance, benefits and retirement shares paid on their behalf." ¶¶57. AMR also agreed not to request "funding or subsidy of any type from HCMC." ¶87. That promise obligated AMR to pay to employ Plaintiffs, including reporting their creditable service hours and salary and making employer contributions to TCRS. ¶ 87.

In October 2024, Henry County gave up control of HCMC. It then passed a resolution to employ Plaintiffs directly "so they could remain eligible to participate in TCRS" and entered the Staffing Services Agreement with AMR. ¶¶ 4, 62. Under that agreement, Henry County became responsible for paying Plaintiffs, including reporting their service hours and salary and making employer contributions to TCRS. AMR, in turn, would reimburse the County's direct costs per employee per hour, "which included benefits and retirement share." ¶ 61-62; 88. Both agreements therefore "confer a direct obligation to Plaintiffs" that their creditable service hours, salary and employer contributions would be remitted to TCRS (¶ 90), and neither Agreement excluded Plaintiffs from those benefits. ¶¶ 91–92.

Defendants failed to deliver to Plaintiffs their retirement benefit. They ran the ambulance services in a way that gave AMR exclusive rights over the services Plaintiffs provided and final authority to direct and control their work, with AMR ultimately paying Plaintiffs' wages and TCRS contributions through reimbursement. That arrangement cost Plaintiffs their status as government employees, and thus their eligibility for retirement service credit. ¶¶ 55, 62, 70, 93. TCRS then removed Plaintiffs' service and salary history for that entire period. ¶¶ 63–65, 70. Plaintiffs therefore lost years of creditable service and reportable income and face substantial reductions in their expected retirement annuities. ¶¶ 72, 75–76, 93. Defendants also deprived Plaintiffs of the employer contributions made on their behalf. ¶¶ 67, 72, 74, 125.

### B. An Integration Clause Does not Prevent Examination of Surrounding Circumstances to Determine Intent to Benefit a Third-Party

Defendants claim that the presence of an integration clause under the Agreements prohibits introduction of extrinsic evidence outside the four corners of the contract, such as oral statements, to add to the contractual terms. *See, e.g.,* Dkt 29-1 at 9. While an integration clause may limit proof of additional contractual promises, it does not necessarily prevent examination of surrounding circumstances to determine whether an identified third party was intended to benefit from the agreement's actual provisions. *See Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1357 (6th Cir. 1991) (proof of third-party beneficiary status may come from the circumstances surrounding the execution of the contract); *Moore Const. Co. v. Clarksville Dep't of Elec.*, 707 S.W.2d 1, 10 (Tenn. Ct. App. 1985) (a person claiming to be an intended beneficiary has the burden of proving from the terms of the contract itself or the circumstances surrounding the contract's execution that he is entitled to recover).

Plaintiffs are not using extrinsic evidence to rewrite the agreement. In *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, the Tennessee Supreme Court held that evidence concerning the circumstances surrounding a contract may place written terms in context, although such evidence may not vary, contradict, or supplement the terms of a fully integrated agreement. 566 S.W.3d 671, 694–96 (Tenn. 2019). They are using the parties' conduct and circumstances to explain why the staffing provisions existed; which personnel they concerned; and what the reimbursement of benefits and retirement costs was intended to accomplish. Facts obtained in discovery might bear on the question of whether Plaintiffs were intended to benefit from the Agreements without injecting an unwritten term in the Agreements.

### C. Plaintiffs Seek to Enforce a Contractual Obligation to Provide Retirement Benefits, Not to Enforce TCRS Rules or Regulations.

Plaintiffs do not contend that Defendants promised to override Tennessee law or command TCRS to award credit regardless of statutory eligibility. *See* Dkt. 29-1 at pg.11-12. Plaintiffs allege that Defendants promised or represented that the employment arrangement itself would be structured and administered lawfully so that Plaintiffs could remain governmental employees and preserve the retirement status material to their continued service. Defendants represented that the arrangement lawfully achieved that result but implemented one that did not; TCRS's later determination does not immunize them from responsibility for their own conduct.

There is a material difference between an order compelling TCRS to extend a benefit prohibited by statute and monetary relief imposed upon another party for actionable conduct causing the loss of that benefit. The first alters TCRS eligibility. The second compensates an alleged injury without necessarily requiring any change to Plaintiffs' TCRS records.

Defendants' public-policy argument confuses the right allegedly violated with the remedy sought. Plaintiffs need not establish that this Court may order TCRS to confer service credit in order to seek monetary relief from parties whose independently actionable conduct allegedly caused an economic loss. The Court can distinguish between an order requiring TCRS to restore disputed service and an award requiring Defendants to compensate Plaintiffs for legally recoverable losses proximately caused by actionable conduct. The latter need not alter TCRS records, require payment from the TCRS trust, or compel it to recognize non-creditable service.

Additionally, Tennessee courts have cautioned that "courts should be even more circumspect about declining to enforce a contract on public policy grounds when the party seeking to invalidate the contract has received the benefit of the other party's performance." *Baugh v.*

*Novak*, 340 S.W.3d 372, 384 (Tenn. 2011) (emphasis added). Plaintiffs allege that Defendants benefitted from their work and cannot invoke public policy to avoid paying for it.

## IV. PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT IMPLIED-IN-FACT OR -IN-LAW (COUNT IV) (AGAINST AMR).

Plaintiffs' alternative claim for a contract implied-in-fact or in-law falls within what Tennessee recognizes is a "class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between the parties, regardless of their assent thereto." *HCA Health Services of Tennessee, Inc.*, 2016 WL 3357180 at *11 (quoting *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154 (1966)). "[I]mplied contracts…provide[] an avenue for recovery when no enforceable contract exists between the parties." *PHI Air Med., LLC v. Corizon, Inc.*, 628 S.W.3d 460, 470 (Tenn. Ct. App. 2021) (*citing Freeman Indus., LLC v. Eastman Chem. Co*., 172 S.W.3d 512, 524 (Tenn. 2005). Implied-in-law contracts "are created by law without the assent of the party bound, on the basis that they are dictated by reason and justice." *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997). A contract implied in fact is one that "arises under circumstances which show mutual intent of assent to contract." *Thompson v. Hensley*, 136 S.W.3d 925, 930 (Tenn. Ct. App. 2003) (citation omitted).

Parties asserting an implied-in-law contract must allege: (1) there is no existing, enforceable contract between the parties covering the same subject matter; (2) the party seeking recovery proves that it provided valuable goods or services; (3) The party to be charged received the goods or services; (4) The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and (5) the circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment. *Ferguson v. Nationwide Prop. & Cas. Ins. Co*., 218 S.W.3d 42, 50

(Tenn. Ct. App. 2006) (*quoting Doe v. HCA Health Services of Tenn., Inc*., 46 S.W.3d 191, 197–98 (Tenn. 2001)).[13]

In Tennessee, "the mere rendering of such services by one and their acceptance by another, the law, without regard to the other's intent, will ordinarily raise a quasi contract on his part to pay the reasonable value of such services; or the circumstances may warrant the triers of fact in finding an implied promise or contract on his part to pay such value." *Murray v. Grissim*, 40 Tenn. App. 246, 250, 290 S.W.2d 888, 890 (1956) (internal citations omitted) (holding that plaintiff's services "were continuous and were rendered under one entire continuing contract, whether such contract be regarded as implied in fact or as implied in law."); *see also Vargo v. Lincoln Brass Works, Inc*., 115 S.W.3d 487, 491 (Tenn. Ct. App. 2003) ("An employment relationship is essentially contractual.") (internal citation omitted).

Plaintiffs here allege they were not parties to the inter-entity Agreements between Defendants. ¶¶86-89; 91.[14] Plaintiffs assert that in the absence of a direct contractual relationship, AMR, by virtue of its control over their working conditions, acted as Plaintiffs' common law

[13] To state a claim for an enforceable contract implied-in-fact "it must be supported by mutual assent, consideration, and lawful purpose." *Thompson*, 136 S.W.3d at 930. Mutual assent may be shown by the conduct of the parties and the surrounding circumstances which, according to the ordinary course of dealing and understanding of men, show a mutual intention to contract. *Id.*

[14] AMR tries arguing that the Agreements are "valid contracts" establishing the terms of Plaintiffs' employment, and thus preclude the finding of an implied contract. *See* Doc 31-1 at 12. First, they contradict themselves. Second, this principle only applies when a valid contract exists between the parties at bar. *See Jaffe*, 817 S.W.2d at 26 (equity cannot be used to avoid "an agreement deliberately **entered into by the parties**, however harsh the provisions of such contract may seem in the light of subsequent happenings." (quoting 17 C.J.S. Contracts § 6 (1963) (emphasis added)); *Smith v. Hi-Speed, Inc*., 536 S.W.3d 458, 480-81 (Tenn. Ct. App. 2016) (concluding that unjust enrichment did not apply when the parties had an enforceable contract covering the same subject matter); *Ridgelake Apartments v. Harpeth Valley Utilities Dist. of Davidson & Williamson Ctys*., No. M2003-02485-COA-R3CV, 2005 WL 831594, at *10 (Tenn. Ct. App. Apr. 8, 2005) ("The clear prerequisite to any recovery under this equitable remedy is "(1) there must be no existing, enforceable contract **between the parties** covering the same subject matter, ...") (citing *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn.Ct.App.1995)) (emphasis added).

employer. ¶¶55-56; 62; 102-104. The FAC describes how for several years Plaintiffs provided and AMR accepted their valuable services as EMTs facilitating AMR's exclusive emergency ground services franchise in Henry County. ¶¶61-62; 86; 98; 114; 122. Plaintiffs communicated at the outset under no uncertain terms that they would provide their labor as EMTs pursuant to AMR's exclusive franchise on the condition that they retained their status and privilege as employees of Government Defendants, including attendant pay and benefits. ¶¶3-4; 56-58; 62; 76.[15] However, through its conduct and course of dealing, AMR supplanted Government Defendants became Plaintiffs' common law employer, thus breaching its implied agreement by causing Plaintiffs to be classified as contract employees with a TCRS-ineligible employer. ¶¶55-56; 62; 70; 102-104. For this reason, Plaintiffs did not receive the retirement benefits which they reasonably expected to receive for the nearly five years they supplied their labor as EMTs, and it would be unjust for AMR as common law employer not to compensate Plaintiffs for the same. *See Murray*, 290 S.W.2d at 891.[16]

These allegations plausibly support an implied agreement between AMR and Plaintiffs concerning their employment status with Government Defendants, including maintaining their compensation and benefits. It is unnecessary to characterize the alleged promise as a guarantee that AMR could control any future TCRS decision. Instead, the compact with Plaintiffs concerns

---

[15] AMR argues "it could not itself" determine TCRS eligibility, so it could not make such an offer to Plaintiffs under an implied contract. But this is not what Plaintiffs claim they bargained for. Plaintiffs allege they supplied their services as EMTs under AMR's direction and control on the condition that their employment status remained as employees of Government Defendants. The consequence of AMR accepting the fruits of Plaintiffs' labor but breaching that mutual understanding was a total loss of retirement benefits over the duration of AMR's franchise.

[16] Finding that "Upon the evidence...the jury could well find that defendant requested plaintiff's services, not as a favor but under such circumstances that a reasonable person would infer that he meant to pay for them; that plaintiff did understand that defendant would pay him the reasonable value of such services when they were terminated or the farm was sold; and that defendant became liable upon an implied contract to make such payment.").

conduct within AMR's control: maintaining the represented employment structure, and administering the arrangement consistently with its asserted purpose. Justice and equity requires that AMR be held liable for its failure to uphold its end of the bargain.

## V. PLAINTIFFS STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS (COUNT III) (AGAINST AMR)

Plaintiffs bring a claim against AMR for tortiously interfering with their employment relationship with Government Defendants. To state a claim, Plaintiffs must allege: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from the tortious interference. *Moore-Pennoyer v. State*, 515 S.W.3d 271, 281 (Tenn. 2017) (citing *Trau–Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn.2002)). "Intentional interference with at-will employment by a third party, without privilege or justification, is actionable." *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994)

On the first element, the FAC assert that at the time of the Agreements, Plaintiffs were employees of Government Defendants. ¶¶40-51; 61-62; 96. On the second element, Plaintiffs allege that AMR knew of their employment relationship with Government Defendants, as they relied upon it in crafting the labor sharing arrangement under each Agreement. ¶¶55-58 (quoting HCMC Chief Executive as stating that AMR "plan[s] to operate it as it is today."); 62; 97. On the third element, Plaintiffs' allege that AMR intentionally interfered with Plaintiffs' employment with Government Defendants by negotiating for itself exclusive rights and responsibilities over Plaintiffs' provision of ground ambulance services, exercising ultimate authority and discretion

over their work as EMTs; and assuming ultimate responsibility to pay for Plaintiffs' employment-related costs, thus rendering Plaintiffs' employment with Government Defendants a nullity. *Id*; ¶¶70, 98. On the fourth prong, Plaintiffs allege that AMR knew that they wished to remain employed by a TCRS-qualified employer, and structured Agreements that facially allowed AMR to retain the benefit of Plaintiffs' labor without incurring the costs to replace them, and proceeded to carry out the Agreements' terms without any assurances the arrangement was legal. *Id*.; ¶56. On the fifth element, Plaintiffs allege that they irrevocably lost multiple years of retirement benefits they enjoyed as employees of Government Defendants, an entirely foreseeable result given the Agreements' language and AMR's execution of its terms. *Id*.; ¶¶75-76; 99-100. Plaintiffs also allege they suffered mentally and emotionally. ¶¶8, 84, 144.

AMR argues that it was incapable of interfering with Plaintiffs' employment because it was in privity with Plaintiffs, but this is demonstrably false. Doc 31-1 at 10-11 (claiming that AMR was a party to Plaintiffs' employment with Government Defendant). No party alleges or points to facts suggesting that AMR directly hired Plaintiffs as employees, or that Plaintiffs were parties to the Agreements. And AMR's participation in separate inter-entity services or staffing contracts does not necessarily make AMR a party to each Plaintiff's governmental employment relationship. Were that so, Plaintiffs would have direct breach of contract claims against AMR. AMR went to great lengths under the Agreements to make clear it was not Plaintiffs' employer. In fact, the very purpose of AMR's illegal Agreements was to give the appearance that Plaintiffs remained under the employ of Government Defendants, such that AMR could avoid having to incur the costs and inconvenience of hiring replacement EMTs to fulfill their exclusive franchise.

AMR also argues that Plaintiffs' allegations of improper motive or means—*i.e.* its desire to prop up the façade of continued employment with Government Defendants so Plaintiffs would

be induced to remain employed as EMTs in the County and AMR could avoid the trouble of expense to find replacements—are not "plausibl[e]." Doc 31-1 at p. 11. But AMR is not allowed at this stage to dispute or otherwise question the "plausibility" of an allegation of fact, which is taken as true for the purposes of a motion to dismiss. *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) ("When evaluating a complaint's sufficiency, we accept its factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and only then determine whether those facts and inferences plausibly give rise to an entitlement to relief") (internal citation omitted). AMR's intent, knowledge, purpose, operational control, and alleged use of improper means present fact-intensive questions; amendment is appropriate if more specificity is needed.

Lastly, AMR argues that even if it interfered with Plaintiffs' employment relationship, TCRS's determination, and not AMR's interference, caused Plaintiffs' damages, *i.e.* their loss of retirement benefits. Doc 31-1 at 11-12. As stated above, Plaintiffs' alleged injury is impairment of their status as employees of TCRS-qualified employers, which consequently impaired the economic benefits of their employment for the duration of the Agreements, including their public-retirement credit. ¶¶81; 98, 105. AMR's interference caused Plaintiffs constructive discharge from government service, and the resultant irretrievable loss of almost five years of participation in a public retirement program. TCRS's determination, made several years after the interference began, simply affirmed the impact AMR's conduct already wrought on Plaintiffs.

## VI. PLAINTIFFS STATE A CLAIM FOR FRAUDULENT INDUCEMENT (COUNT V) (AGAINST AMR)

Plaintiffs allege that AMR fraudulently induced them to remain employed as EMTs in Henry County under the duration of the Agreements. Fraudulent inducement occurs when a defendant "made a false statement of material fact that is designed to induce the plaintiff to rely on it." *Thompson v. Bank of America*, 773 F.3d 741, 752 (6th Cir. 2014).

To establish fraud in the inducement of a contract under Tennessee law, Plaintiffs must allege facts demonstrating: (1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from reliance." *Coleman v. Wells Fargo Banks, N.A.*, 218 F. Supp. 3d 597, 605 (M.D. Tenn. 2016) (*citing Ewan v. Hardison Law Firm*, No. W2011–00763–COA–R3CV, 2012 WL 1269148, at *8 (Tenn. Ct. App. Apr. 16, 2012)). Plaintiffs' fraudulent inducement claims must be plead with particularity. *Fulwood Constr. Co., LLC v. McGil Holdings, LLC*, No. 2:20-CV-02524-TLP-ATC, 2020 WL 7090686, at *3 (W.D. Tenn. Dec. 3, 2020); *Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 555 F. App'x 493, 498–99 (6th Cir. 2014) ("To comply with Rule 9(b), a plaintiff must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied.") (internal quotations and citations omitted).

Under prong (1) and (2) of the elements of fraudulent concealment "[t]here must be a concealment…[which] in this sense may consist in withholding information asked for, or in making use of some device to mislead, thus involving act and intention…[I]n addition to a failure to disclose known facts, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry, or else that there must be a legal or equitable duty resting on the party knowing such facts to disclose them." *Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 527 (6th Cir. 2007) (*citing Patten v. Standard Oil Co. of La.,* 165 Tenn. 438, 55 S.W.2d 759, 761 (1933)).

Here, Plaintiffs allege that AMR effectively deployed a bait and switch. The FAC alleges that AMR contracted to assume exclusive franchise (and the financial benefits that flow from it) over emergency medical services within Henry County, Tennessee. ¶¶55-58; 86-89. AMR falsely

represented in the Agreements it wrote and endorsed and to Plaintiffs' employers that, despite negotiating for itself the contractual power to direct, control, and pay for Plaintiff's labor as EMTs, it was merely "leasing" their services such that Plaintiffs would remain entitled to the pay and benefits they enjoyed as Government Defendants. ¶¶56-58; 62; 110. Plaintiffs allege that their status as employees of a TCRS-qualified was material to their decision to remain EMTs with the County for the duration of the Agreements. ¶¶76 (Plaintiffs agreed to remain employed after the AMR Agreement on the express condition that they would remain participants in TCRS); 111. Such allegations supply the facts regarding the "time, place and contents of the misrepresentation(s)" sufficient to satisfy Rule 9.

These allegations demonstrate that AMR knew or recklessly disregarded the falsity of its representations that Plaintiffs would be recognized as employees of the Government Defendants under the Agreements. Tennessee Supreme Court has long recognized that "the most significant question" in determining whether one is an employer of another is "the work circumstances under which [a] paycheck is earned." *Catlett v. Indemnity Ins. Co*., 813 S.W.2d 411 (Tenn. 1991). Tennessee courts have repeatedly held that the power to control and supervise an individual's work is "the most important" factor in determining the identity of an employer under the common law. *See Masiers v Arrow Transfer & Storage Co*., 639 S.W. d. 654 (Tenn. 1982); *Stratton v. United Inter-Mountain Telephone Co*., 695 S.W.2d 947 (Tenn. 1985); *Galloway v. Memphis Drum Service*, 822 S.W. 2d 584 (Tenn. 1991). The Agreements are definitive on this point: AMR had ultimate control to direct Plaintiffs' labor and ultimately paid the Plaintiffs' compensation. ¶¶56-58; 62; 110. Plaintiffs further allege that AMR did not seek any guidance from TCRS to verify that its Agreement was valid and legal. ¶59. AMR's representations that Plaintiffs would remain employees of Government Defendants and that it would "operate it as it is today" was a contrivance

meant to placate Plaintiffs and distract from the operational and economic reality that AMR had become Plaintiffs' employer under law.

For elements (3) and (4), the intent of the defendant and of the reliance of the plaintiff on the misrepresentation are questions of fact. *Dog House Investments, LLC v. Teal Properties, Inc.*, 448 S.W.3d 905, 916 (Tenn Ct. App. 2014); *Biancheri v. Johnson*, No. M2008-00599-COA-R3-CV, 2009 WL 723540 at *8 (Tenn. Ct. App. M.S., filed Mar. 18, 2009). Additionally, several factors determine whether reliance on an allegedly fraudulent statement was reasonable for element (4), including the plaintiff's business expertise and sophistication, the availability of relevant information, and the opportunity to discover the fraud. *Rhynes v. Bank of Am.*, No. 12-CV-2683, 2016 WL 4533035, at *9 (W.D. Tenn. Jan. 19, 2016) (*citing Allied Sound, Inc. v. Neely*, 58 S.W. 3d 119, 122 (Tenn. Ct. App. 2001) (internal quotation marks omitted)).

With respect to element (3), intent to induce reliance, Plaintiffs allege AMR knew that Plaintiffs would only remain in service as EMTs for the County if they were employed with a TCRS-qualified employer. ¶¶3-4; 56-58; 62; 76. AMR represented that Plaintiffs could continue their terms of employment with the Government Defendants under the Agreements to entice them into staying. ¶¶56-58; 61-62. With respect to element (4), reliance, Plaintiffs allege that they trusted that their employment status would not change under the Agreements, which is why they refrained from seeking employment elsewhere. ¶¶76,111. Plaintiffs are first-responders and EMTs by trade; they are not legally trained or skilled in contract interpretation. They would have no reason to doubt AMR's representations that their terms and conditions of employment would be unaffected by the Agreement or that Henry County's emergency services function would "operate it as it is today." These allegation show this claim should be sustained.

AMR argues that Plaintiffs do not identify who at AMR made a false statement, what was said, when, where, or to which Plaintiffs." (Doc 31-1 at p. 13). Rule 9(b) does not demand that much. The Federal Rules reflect a "general policy of 'simplicity and flexibility' in pleadings," which applies with equal force to Rule 9(b). *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503–04 (6th Cir. 2008). "So long as a [plaintiff] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met," and additional detail "is not mandatory." *Id.* at 504. The FAC provides each. It identifies the time, place and content of the Agreements (¶¶ 55-58; 62), the scheme (¶110 ("AMR intentionally misrepresented to Plaintiffs that if they remained employed as EMTs during the pendency of the Agreement, Plaintiffs would continue to accrue creditable hours towards their TCRS retirement as employees of Henry County and HCMC.")) and the resulting injury. ¶8 ("As a result of HCMC's actions and the Agreement executed between HCMC and AMR, Plaintiffs lost years of creditable service and reportable income, and this have incurred substantial reductions in their expected retirement annuities.").

Plaintiffs' fraudulent inducement claim does not hinge on predictions, opinions, or "sales talk." The FAC is clear that AMR's falsehood was the representation that Plaintiffs, as employees of Government Defendants, could be leased to AMR throughout the duration of the Agreements, without altering the terms of Plaintiffs' employment relationship. There is no alternative way to read the Agreements, or to understand what AMR meant when it told Plaintiffs' employer it would "operate it as it is today." Plaintiffs did not rely on a prediction about what TCRS might decide in the future, but rather what AMR represented in that moment about the Agreements' impact on

their employment. The FAC alleges that AMR made such statements knowing them to be false or, at minimum, had utter disregard for their truth.

## VII. PLAINTIFFS STATE A CLAIM FOR PROMISSORY-ESTOPPEL (COUNT VII) (AGAINST AMR).

The reason for the doctrine of promissory estoppel, also known as "detrimental reliance," is "to avoid an unjust result." *Calabro v. Calabro*, 15 S.W.3d 873, 879 (Tenn. Ct. App. 1999) (determining that there exist disputes of material fact as to the alleged promises of defendant, the plaintiff's action and response thereto, and reversing summary judgment in favor of defendant); *Alden v. Presley* 637 S.W.2d 862, 864 (Tenn.1982) ("A promisor who induces substantial change of position by the promisee in reliance on the promise is estopped to deny its enforceability as lacking consideration.").

To claim promissory estoppel, Plaintiffs must show "(1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment." *Rice v. NN, Inc. Ball & Roller Div*., 210 S.W.3d 536, 544 (Tenn. Ct. App. 2006)). "[P]romissory estoppel is not dependent upon the existence of an expressed contract between the parties." *Engenius Entertainment, Inc. v. Herenton*, 971 S.W.2d 12, 19 (Tenn.App.1997) (holding the trial court erred in dismissing promissory estoppel claim where the complaint alleged defendant made a promise which they reasonably should have expected to induce action by the plaintiff, that plaintiff did take such action induced by the promise, and that plaintiff relied on the promise to his detriment.).

Here, Plaintiffs have alleged that AMR promised clearly and definitively that by providing their labor as EMTs during their pendency of the Agreements, Plaintiffs' work as first-responders would "operate as it is today" as employees of Government Defendants (¶¶56-58; 61-62); that Plaintiffs reasonably relied upon those representations in continuing their employment as EMTs

during the pendency of the Agreements which Plaintiffs would not have done but for AMR's promises; that Plaintiffs suffered substantial economic losses and emotional distress as a result of that reliance; and that enforcement of AMR's promises is necessary to avoid injustice. ¶¶8, 129-134; *see also Vastoler v. Am. Can Co.,* 700 F.2d 916, 919 (3d Cir. 1983) (stating a jury could certainly find that when Plaintiff was induced to assume a supervisory position in exchange for enhanced pension benefits that never fully materialized, he was forced to absorb additional stress and emotional trauma to his detriment).

AMR's motion misidentifies the promise at issue. AMR claims that Plaintiffs wish to enforce a promise to pay them TCRS retirement benefits. Doc 31-1 at 17. That is incorrect. As explained above, Plaintiffs were unequivocal that if AMR sought to employ them directly as EMTs, they would seek employment elsewhere with another TCRS-qualified employer. ¶¶3-4; 56-58; 62; 76. In order to retain Plaintiffs and eliminate the need to invest resources in replacement first-responders, AMR promised that during the pendency of the Agreements, it could legally "lease" Plaintiffs' labor as employees of Government Defendants, exercise control over their working conditions as set forth in the Agreements, and pay for the value of their services as EMTs without affecting their employment status. *Id.;* ¶¶86-88, 102-104. By making such promises, AMR reasonably expected Plaintiffs to forgo other employment opportunities and maintain their positions with Government Defendants and what they rightfully believed was the continuation of their retirement benefits. ¶132. The promise which induced Plaintiffs to remain employed under the Agreements to their detriment was that their employment status would remain unaffected by the Agreements and AMRs execution of their terms, not a "guarantee of public pension eligibility." (Doc 31-1 at 17).

AMR contends that Plaintiffs' promissory estoppel claim seeks to rewrite the Agreements, but the FAC does no such thing. Plaintiffs allege that by its plain terms, the Agreements created a binding obligation on AMR to refrain from interfering with Plaintiffs' status as employees of Government Defendants. AMR had to make such warranties in the Agreements because it knew that Plaintiffs would not otherwise have continued in their EMT roles once AMR obtained its exclusive franchise in Henry County. ¶¶3-4; 56-58; 62; 76. By relying on these promises, Plaintiffs sacrificed the opportunity to pursue other job options, lost their qualified status and consequently, their ability to realize five years' worth of benefits in TCRS. *See Cooksey v. Shanks*, 136 S.W.2d 57, 59 (1939) ("Where work is done under an express contract which does not fix the compensation therefor, the person performing the work without doubt is entitled to recover on a quantum meruit whatever the work is worth.").

Lastly, AMR argues that Plaintiffs identify no sufficiently definite AMR promise. But the proof is in the pudding: the Agreements represented that Plaintiffs could provide their labor as EMTs under AMR's control and operation while remaining on the payrolls of qualified government employers, with retirement service continuing to be reported and retirement-related costs being reimbursed. The FAC's allegations concerning Plaintiffs' course of performance during and subject to the terms of the Agreements is relevant to whether a sufficiently definite promise existed and whether Plaintiffs reasonably relied upon it.

## VIII. PLAINTIFFS STATE A CLAIM FOR UNJUST ENRICHMENT (COUNT VI) (AGAINST AMR)

AMR promised Plaintiffs the perks of government employment, including retirement benefits, in exchange for providing their labor for the benefit of its exclusive franchise. Plaintiffs fulfilled their end of the bargain, but AMR did not and yet still benefited from Plaintiffs' work.

Under an unjust enrichment theory, courts impose a contractual obligation where there is 'no contract between the parties or the contract has become unenforceable or invalid,' and the defendant will be unjustly enriched unless the court imposes a quasi-contractual obligation."[11] *Fam. Tr. Servs. LLC v. Green Wise Homes LLC*, 693 S.W.3d 284, 304–05 (Tenn. 2024) (citing *Whitehaven Cmty. Baptist Church*, 973 S.W.2d at 596). Courts use the terms contract implied by law, quantum meruit and unjust enrichment "interchangeably . . . to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between the parties, regardless of their assent thereto." *AMISUB (SFH), Inc. v. Cigna Health & Life Ins. Co*., 681 F. Supp. 3d 842, 851 (W.D. Tenn. 2023), *aff'd*, 142 F.4th 403 (6th Cir. 2025) (citing *HCA Health Services of Tennessee, Inc.,* 2016 WL 3357180, at *11). A plaintiff "must show that (1) a benefit has been conferred upon the defendant; (2) the defendant appreciated the benefit; and (3) acceptance of the benefit under the circumstances would make it inequitable for the defendant to retain the benefit without paying the value of the benefit." *Id.* (citing *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997)). "The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005).

At the pleading stage, the question is only whether the Complaint plausibly suggests these elements, because "'[w]hether a benefit has been conferred and the value of such benefit is a fact question,' and so left to the jury." *Asher v. 0xbow Ltd.*, No. 3:25-CV-01057, 2026 WL 2268379, at *11 n.30 (M.D. Tenn. Aug. 6, 2026). Applying that standard in *Hill v. Ardent Health Services*, the court denied a motion to dismiss where the plaintiff "allege[d] that she and her co-workers provided benefits to Defendants through their labor; that Defendants knowingly and willingly

accepted the benefits of that labor; and it would be inequitable for Defendants to retain the benefits of the labor without paying for it." 806 F. Supp. 3d 711, 719 (M.D. Tenn. 2025).

The allegations of the FAC mirror those allegations sustained in *Hill*. First, Plaintiffs conferred a benefit on AMR in the form of their expertise and services, which they provided only because of the promised retirement benefits. ¶¶56-58; 61-62. Second, AMR appreciated that benefit: Plaintiffs' continued service allowed Defendants' Agreement to go forward, spared AMR the time and money of hiring and training new employees, and gave AMR the benefit of Plaintiffs' extensive tenure and experience. ¶56. Third, retaining the benefit without paying for it is inequitable. Plaintiffs have been stripped of the years of service credit they believed they were earning, and since AMR reimbursed Government Defendants for the employer contributions to TCRS made on the Plaintiffs' behalf, this infers that AMR received their money back when TRCS refunded the employer contributions in December, 2025. ¶¶57 (AMR's agreement to reimburse Government Defendants retirement shares paid on Plaintiffs' behalf); 62 (same); 72; 76; 108; 124. As in *Hill*, the Court should deny the motions to dismiss.

Defendant's arguments do not negate Plaintiffs' allegations or warrant dismissal of this claim. While AMR argues that unjust enrichment is unavailable because there is an "enforceable express contract governing the relationship and subject matter" in the form of the Agreements (Doc. 31-1 at 15-16), it also argues that Plaintiffs have no enforceable rights under those same Agreements. *See* Doc 31-1 at 9; Section III *infra*. Even assuming, without conceding, that Plaintiffs were parties to the Agreements, unjust enrichment is plead as an alternative to their breach of contract claim.[17]

[17] In *Iron Horse Energy Servs., Inc. v. S. Concrete Prods., Inc*., 443 F. Supp. 3d 952, 958 (W.D. Tenn. 2020), the defendant moved to dismiss the unjust enrichment claim because a binding agreement existed, and the court held that "pending a finding by the Court as to the existence or

AMR argues that it did not retain any unjust benefit because it paid Plaintiffs for their labor as EMTs and did not wrongfully retain any retirement benefits itself. Doc 31-1 at 16. This argument misreads the claim. Plaintiffs worked as EMTs in exchange for the compensation and benefits that flowed from being a government employee, which included TCRS retirement benefits, so wages alone were only partial consideration for the benefit Plaintiffs conferred. ¶57. Moreover, the FAC alleges that TCRS refunded all employer contributions, so it is fair to infer that AMR ultimately received these monies. *Id*; ¶¶62; 72; 76; 108; 124. Making a partial payment and retaining the rest is precisely the situation in which "it would be inequitable for [the defendant] to retain the benefit without payment of the value thereof." *Concrete v. Harmony Hosp., LLC*, No. M202000956COAR3CV, 2021 WL 3523248, at *7 (Tenn. Ct. App. Aug. 11, 2021). And whether a benefit was conferred, including the savings in hiring and training costs described above, or whose money the contributions rightfully belong to are questions of fact for trial that cannot be resolved on a motion to dismiss. *Asher*, 2026 WL 2268379, at *11 n.30.

## IX. PLAINTIFFS STATE A CLAIM FOR NEGLIGENCE AND/OR NEGLIGENT MISREPRESENTATION (COUNT VIII) (AGAINST AMR)

The FAC premises its allegations of negligence or negligent representation on AMR representing that Plaintiffs could remain employed with TCRS-qualified employers while serving as EMTs under AMR's direction and control, which they relied upon to their injury.

---

terms of any contract governing the concrete specifications, it would be premature to dismiss the alternative claims." *Id.; see also* Hill, 806 F. Supp. 3d at 719 ("[T]he fact that Ms. Hill pleads alternative and even inconsistent theories does not doom her unjust enrichment claim."). Rule 8(d) exists for exactly this situation. Plaintiffs' unjust-enrichment theory should remain available until the Court determines whether Plaintiffs may enforce the written agreements, whether those agreements govern the particular obligation, whether an implied agreement existed directly with Plaintiffs, and which Defendant actually received or retained the benefit at issue.

The law of negligent misrepresentation subjects one to liability “for pecuniary loss caused to [others] by their justifiable reliance upon the information” supplied by the defendant. *Bennett v. Trevecca Nazarene University*, 216 S.W.3d 293, 300–301 (Tenn.2007). The elements of negligent misrepresentation are: "(1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and (2) the defendant supplies faulty information meant to guide others in their business transactions; and (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relies upon the information." *Parks v. Fin. Fed. Sav. Bank*, 345 F. Supp. 2d 889, 894 (W.D. Tenn. 2004).

“[T]o succeed on a claim for negligent misrepresentation, a plaintiff must establish ‘that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiffs justifiably relied on the information.’” *Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (internal quotation omitted). “Tennessee has adopted Section 552 of the Restatement (Second) of Torts ‘as the guiding principle in negligent misrepresentation actions against ... professionals and business persons.’” *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997) (quoting *Bethlehem Steel Corp. v. Ernst & Whinney,* 822 S.W.2d 592, 595 (Tenn. 1991)). The Restatement (Second) of Torts § 552(1) (1977) provides as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

As to the first element, the FAC alleges that AMR is a privately for-profit corporation in the business of providing health care and emergency medical services, which retained Plaintiffs’

labor as EMTs to fulfill its business needs, *i.e.* its exclusive franchise over ambulance services in Henry County. ¶¶3, 27, 55. AMR was clearly acting in the course of its business.

As to the second element, Plaintiffs allege they made a business decision to remain employed after AMR entered the picture because it warranted that, pursuant to its labor sharing arrangement with Government Defendants, AMR could "lease" Plaintiffs' labor as EMTs from the Government Defendants and control their work under its exclusive franchise without changing Plaintiffs' status as government employees or the compensation and benefits they enjoyed as a result. ¶¶56-58; 62; 76; 78; 123; 137. AMR was wrong—both the arrangement and AMR's exercise of discretion and control over Plaintiffs' working conditions made it Plaintiffs' common law employer and stripped them of the ability to remain employed with a TCRS-qualified employer. ¶¶81; 93; 98. Plaintiffs' allegations are broader than a prediction concerning a future administrative ruling: the communication concerned the nature and legal effect of Plaintiffs' employment, including wages, benefits, and retirement-related expenses. A rational trier of fact could find that the second element of negligent misrepresentation has been satisfied.[18]

The third element is satisfied by allegations that defendant failed "to use reasonable care in communicating" information about benefits. *Parks*, 345 F. Supp. 2d at 894; *see also McCoy v. E. Tennessee Luxury Coach, LLC*, No. 3:24-CV-94-DCP, 2024 WL 4916367, at *4 (E.D. Tenn.

---

[18] *See Schlansky v. United Merchants & Mfrs., Inc*., 443 F. Supp. 1054, 1059–60 (S.D.N.Y. 1977) ("[A]lthough defendant would not have been negligent in remaining silent as to the terms of the pension plan, once a voluntary representation based on the plan's terms was uttered, a duty of care arose as to the accuracy and truth of those representations along with a concomitant obligation to avoid negligent omissions following thereafter."); *MacKay v. Rayonier, Inc*., 25 F. Supp. 2d 47, 51–52 (D. Conn. 1998) (denying motion to dismiss where plaintiff relied on defendant's representation that "if [employee] accepted the position," the job conditions would maintain his eligibility for pension benefits); *Honda v. Bd. of Trs. of the Employees' Ret. Sys. of the State*, 108 Haw. 212, 222, 118 P.3d 1155, 1165 (2005) (sustaining claim where defendant's falsehoods induced employee into unknowingly foregoing survivor benefits he intended for his wife).

Nov. 6, 2024). Plaintiffs specifically allege that AMR did not ask TCRS to weigh in on the validity of their proposed labor sharing arrangement or ask it whether it might disrupt their status as government employees. ¶59. By failing to perform this diligence, a rational finder of fact could find that AMR failed to use reasonable care in communicating that Plaintiffs would remain employed with Government Defendants during its exclusive franchise.

As to the fourth prong, Plaintiffs allege that they would not have remained employed as EMTs and would have sought other TCRS-qualified employment had they known they would lose their status as employes of Government Defendant. ¶¶110-111; 132; 140; *see also Parks*, 345 F. Supp. 2d at 895. A rational finder of fact could find that Plaintiff justifiably relied on this faulty information. *Id.* Finally, Plaintiffs allege that they suffered a pecuniary loss, *i.e.* retirement benefits and contributions lost by being misled into plying their labor in service of AMR under the Agreements, thus stripping them of their status as government employees. ¶¶ 67. 72, 74. 75–76, 93. 125; *see also* T.C.A. § 29-39-101 (listing economic damages available under Tennessee's damages statute). Plaintiffs also allege they have experienced humiliation and embarrassment, having suffered the loss of nearly five years' worth of work without any retirement benefits to show for. ¶¶8, 84, 144.

The same allegations of the FAC which state a claim for negligent misrepresentation also sustain a challenge to Plaintiffs' count for negligence against AMR.[19] As to duty, Plaintiffs allege that due to its control over their terms of employment, whether by contract or as recognized under

[19] In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)

the common law, AMR owed Plaintiffs a duty to use reasonable care in structuring and communicating the employment arrangement, particularly because Defendants knew that retirement eligibility was the arrangement's central purpose. ¶¶56-58; 61-62; 129; *see also* Section III and IV, *infra.*[20] AMR's argument that it had no duty to guarantee TCRS benefits misses the point. Doc 31-1 at 20. AMR exercised total control over the factors which resulted in Plaintiffs becoming AMR employees, which caused Plaintiffs' loss.

AMR breached their duty by representing that it could "lease" Plaintiffs' services without threatening their status as employees of Government Defendants and then exerting control, direction, and ultimate financial responsibility inconsistent with this representation. ¶57, 88. AMR further breached its duty by failing to confirm with TCRS or other authority that its labor sharing arrangement may disenfranchise Plaintiffs of their status as government employees. ¶59.

The FAC alleges that Defendant's restructuring of Plaintiffs' employment, both formally and operationally, are the factors which ultimately caused Plaintiffs to lose their status as government employees and thus their TCRS eligibility. ¶70.[21] AMR can point to no rule, policy, law or other mechanism that relieves it of AMR of liability. Plaintiffs' loss of employment status (and concomitantly, their retirement benefits) was reasonably foreseeable given the Agreements' language ceding control over the terms and conditions of their work to AMR and its execution of these terms. *Cotton,* 576 S.W.3d at 639 ("[A]n intervening event that is a normal response created

---

[20] *See City of Morristown v. AT&T Corp.*, 206 F. Supp. 3d 1321, 1327 (E.D. Tenn. 2016) ("[W]hen a contractual relationship exists between parties, a duty of care can arise out of the circumstances surrounding or attending the transaction, in which case a breach of that duty is a tort and the contract furnishes the occasion for the tort.")

[21] *Turnage v. Oldham*, 346 F. Supp. 3d 1141, 1155 (W.D. Tenn. 2018) (Proximate cause has "a three-prong test: (1) the defendant's conduct must have been a 'substantial factor' in bringing about the plaintiff's harm; (2) there is no rule or policy that should relieve the defendant from liability because of the manner in which injury occurred; and (3) the harm that the plaintiff suffered must have been reasonably foreseeable by a person of ordinary intelligence and prudence."

by the defendant's negligence will not qualify as a superseding, intervening cause so as to relieve the original wrongdoer of liability."); ¶¶75-76; 99-100.

Finally, the FAC alleges that Plaintiffs have suffered pecuniary losses, e.g. diminished retirement value, lost service credit value, replacement-retirement costs, increased employee contributions or savings obligations, lost earnings or benefits resulting from reliance, and other ascertainable financial losses. ¶¶ 67. 72, 74. 75–76, 93. 125. To the extent AMR tries to argue that any of Plaintiffs' alleged damages are not available, it is misplaced as the availability of damages bears on the ultimate remedy, not on dismissal. *See Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 909 (Tenn. 1999) (stating that it would be unfair to require plaintiff to elect among remedies before the issues are submitted to the fact finder). Even if emotional-distress damages are unavailable under negligence, that issue concerns the scope of recoverable damages and does not necessarily justify dismissal of a claim alleging independent pecuniary losses.

## X. PLAINTIFFS STATE A CLAIM FOR UNDER § 1983 (COUNT I) (AGAINST GOVERNMENT DEFENDANTS)

### A. Plaintiffs' § 1983 Claims Are Timely

The parties do not dispute that a one-year statute of limitations applies to Plaintiffs' § 1983 claims. *See* Tennessee Code Annotated § 28–3–104(a)(3) (providing that a civil action brought under the federal civil rights statutes must be filed within one year after the cause of action accrues); *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015). The parties dispute when those claims accrued. Government Defendants argue that the one-year limitations period began running in February, 2025, when Plaintiffs first learned of TCRS's eligibility determination. *See, e.g.*, Doc 30-1 at 7-11. But Defendants' argument depends on treating Plaintiffs' due process claims as involving one indivisible deprivation which was fully

effectuated in February 2025. It was not. As demonstrated below, Plaintiffs 1983 claims are timely, as they were brought within one year from having fully effectuated claims.

While the state statute of limitations governs claims under § 1983, the accrual of claims is governed by federal law. *See Eidson v. State of Tenn. Dep't of Children's Servs*., 510 F.3d 631, 634 (6th Cir.2007). Accrual occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 387, 127 S. Ct. 1091, 166 L.Ed.2d 973 (2007) (internal quotation marks and citations omitted); *Durham v. Martin*, 388 F. Supp. 3d 919, 930 (M.D. Tenn. 2019), *aff'd sub nom. Durham v. McWhorter*, 789 F. App'x 533 (6th Cir. 2020). In Tennessee, it is "axiomatic that a statute of limitations is not tolled until the injured party knows the full extent of its damages." *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 849 (Tenn. 2010) (internal citation omitted); *Wallace*, 549 U.S. at 391 ("Under the traditional rule of accrual ... the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages."). *See also Vanderbilt Univ. v. Scholastic, Inc*., 382 F. Supp. 3d 734, 759 (M.D. Tenn. 2019) (stating that a tortious interference with contract claim is not sufficiently plead unless there is an allegation "that the plaintiff suffered damages resulting from the breach.").[22]

Plaintiffs assert two distinct losses imposed by Government Defendants. First, Plaintiffs claim they were wrongfully deprived of their right to ply their trade as EMTs under the employ of Government Defendants in exchange for promised retirement benefits, which were lost when four years-worth of their service credits, salary levels, and employee contributions were reversed out of TCRS in January, 2026. *See* ¶¶52, 58, 62-64, 75-84. In February, 2025, TCRS announced that

[22] As their own motions point out, Plaintiffs' liability claim against Government Defendants under § 1983 ripens "only when the execution of the government's policy or custom […] inflicts the injury". Doc 30, p. 11. (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

it "intended" to remove Plaintiffs' TCRS service and salary history and refund all contributions since May, 2020, but represented that it could take several months to change the Plaintiffs' status in the system and refund the contributions. ¶65. But Plaintiffs' actual damages for this deprivation did not materialize until January, 2026, when the System formally adjusted Plaintiffs' service and salary rates, and refunded their employee-contributions and the consequences of Government Defendants' contractual arrangements with AMR were finally realized. ¶¶73, 75. Any action prior to that would have been premature, as Plaintiffs did not "know[] the full extent of [their] damage," and thus did not have "a complete and present cause of action." *City of Lebanon*, 318 S.W.3d at 849; *Wallace*, 549 U.S. at 391.

Plaintiffs allege that a second, separate deprivation of a property right occurred when Government Plaintiffs wrongfully withheld paying Plaintiffs the employer contributions made on their behalf after they were refunded back to Government Defendants in December, 2025. Plaintiffs did not (and could not) have any notice of a claim regarding the taking of the employer contributions until at the earliest December, 2025, when TCRS remitted approximately $200,000 back to Government Defendants, who have refused to pay them to Plaintiffs and have not afforded any opportunity to challenge their decision. ¶¶72, 74, 81-82. Government Defendants had previously informed Plaintiffs they would be receiving back the contributions. *See* ¶¶66 (Henry County mayor stating that all of the contributions made on Plaintiffs' behalf will be returned to the County by TCRS, which will do whatever it can to "make them whole."); 67 (they will return "everything" back to Plaintiffs since they were fully vested). Plaintiffs'§ 1983 claims are timely.

**B. Plaintiffs Sufficiently Allege a Protected Property Interest**

Contractual rights are property interests under the due process clause. *Arnett v. Kennedy*, 416 U.S. 134, 94 S. Ct. 1633, 40 L.Ed.2d 15 (1974); *Goldberg v. Kelly*, 397 U.S. 254, 90 S. Ct.

1011, 25 L.Ed.2d 287 (1970). Additionally, government pension benefits constitute a protected property interest under the Fourteenth Amendment if the employee had a reasonable expectation of receiving pension credit based on his listed status as a government employee.[23]

Plaintiffs do not allege a mere subjective hope of some future benefit. Plaintiffs allege that they had a contractual relationship Government Employers as third-party beneficiaries. *See* Section III, *infra.* The FAC also alleges that Plaintiffs reasonably relied on Government Defendants' representations that they would retain their employment status under the Agreements, and did so to their detriment. ¶¶73-76; 78-81. The FAC also alleges that Plaintiffs lost retirement contributions returned to Government Defendants. ¶¶8, 72. They also allege Government Defendants' conduct imposed emotional damages as Plaintiffs cope with losing almost five years' of their working lives with zero retirement benefit gained. ¶¶8, 84, 144.[24]

**C. Plaintiffs Satisfy *Monell***

Government Defendants argue that the FAC does not identify any County policy or custom that caused the asserted constitutional deprivation. But Plaintiffs allege several facts which pertain to pleaded or reasonably inferred official acts by Government Defendants, including: (1) formal

[23] *National Educ. Association-Rhode Island by Scigulinsky v. Retirement Bd. of Rhode Island Employees' Retirement System*, 890 F. Supp. 1143, 1164 (D.R.I. 1995)) (holding that even plaintiffs failed to meet the legal requisites to collect pension benefits, allegations that they took both professional and financial actions in reliance on the expected benefits sufficient to create a property interest). *See also Black v. Pension Benefit Guar. Corp.*, 983 F.3d 858, 868 (6th Cir. 2020) (To have a property interest in their vested pension benefits, the retirees clearly must have more than an abstract need or desire for them ... more than a unilateral expectation of them instead, they must instead have a legitimate claim of entitlement to them); *Adamson v. City of Provo, Utah*, 819 F. Supp. 934, 950 (D. Utah 1993) (finding that the plaintiffs possess a property interest in equal employer contributions for due process purposes).

[24] *See Contract Design Grp., Inc. v. Wayne State Univ.*, 635 F. App'x 222, 233 (6th Cir. 2015). ("[M]ental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983.").

County resolutions concerning ambulance services which permitted the May 2020 Agreement, which concerned Plaintiffs' payroll and retirement reporting (¶5, 53-58; 62); (2) the County's participation in and administration of TCRS obligations (¶¶37-39); (3) Henry County's October 2024 Staffing Agreement (¶62); and (4) receipt and disposition of refunded employer contributions, including Government Defendants' official refusal to pay or otherwise account for those funds. An officially authorized agreement, resolution, or decision by a final policymaker may constitute municipal policy without proof of a longstanding informal custom.[25] Plaintiffs' allegations concern governmental arrangements and decisions themselves adopted or directed by an official or governmental body possessing final policymaking authority over the relevant subject, thus satisfying this requirement under *Monell*.

**D. Henry County Bears Liability Directly Based on its Own Conduct.**

The FAC is clear that Plaintiffs has made factual allegations and direct claims against Henry County regarding its own conduct, and are not relying on vicarious liability. Henry County works hard to distance itself from the 2020 arrangement, arguing that HCMC is a distinct legal entity and that the County cannot be liable merely because HCMC participated. Even accepting that premise, it does nothing to dispose of claims based on the County's own later conduct, such as the County's 2024 Staffing Agreement with AMR, its later public-employment and payroll role,

---

[25] *Cady v. Arenac Cnty.*, 574 F.3d 334, 345 (6th Cir. 2009) (A single act by a decisionmaker possessing final authority to establish municipal policy with respect to the action ordered may suffice in demonstrating that policy or custom). *Guptill v. City of Chattanooga, Tennessee*, 160 F.4th 768, 782–83 (6th Cir. 2025) (finding that municipal policy does not have to take the form of a longstanding informal practice, but instead be imposed for a single decision by municipal policymakers under appropriate circumstances—for example, a single decision by a city council.

its retirement-reporting responsibilities, its alleged receipt of refunded contributions, or its decisions about those funds.

## CONCLUSION

Defendants' motions try to turn the TCRS Director's eligibility determination into a complete shield against liability for their own alleged conduct. But whether Plaintiffs ultimately qualify for TCRS service credit is a different question from whether Defendants must answer for designing, representing, operating, and benefiting from an employment structure that allegedly cost Plaintiffs the very retirement benefits it was meant to preserve. Plaintiffs were told they would remain public employees and keep earning their retirement. Defendants took the benefit of nearly five years of Plaintiffs' work on that basis. And when the arrangement failed, Plaintiffs were left to bear the loss alone. Plaintiffs respectfully urge the Court to deny Defendants' motions and permit Plaintiffs' claims to proceed to discovery.[26]

DATED: November 25, 2026

Respectfully submitted,

*/s/ Joey P. Leniski, Jr.*

Joey P. Leniski, Jr., BPR No. 22891
**HERZFELD, SUETHOLZ, GASTEL, LENISKI AND WALL PLLC**
1920 Adelicia Street, Suite 300
Nashville, Tennessee 37212
Phone: (615) 800-6225
Email: joey@hsglawgroup.com

*Attorney for Plaintiffs*

[26] In the event the Court dismisses any claims, Plaintiffs respectfully seek leave to amend under Rule 15(a)(2).

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of November, 2026, the foregoing was filed with the District Court's CM/ECF electronic filing system, which delivers a copy to the following counsel of record:

Mozianio S. Reliford, III
POLSINELLI, PC
501 Commerce Street, Suite 1300
Nashville, Tennessee 37203
treliford@polsinelli.com

William C. Vail
POLSINELLI, PC
1201 W. Peachtree Street NW, #1100
Atlanta, Georgia 30309
wvail@polsinelli.com

Nathan D. Tilly
Dylan E. Sutherland
GLENN TILLY, PLLC
162 Murray Guard Drive, Suite B
Jackson, Tennessee 38305
ntilly@pgtfirm.com
dsutherland@pgtfirm.com

John E. B. Gerth
Kendria S. Lewis
EPSTEIN BECKER & GREEN, P.C.
1222 Demonbreun Street, Suite 1400
Nashville, Tennessee 37203
jgerth@ebglaw.com
klewis@ebglaw.com

*/s/ Joey P. Leniski, Jr.*
Joey P. Leniski, Jr.